**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/walaw/



FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JAN 2 2 2015
Madsen, C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 AM on Jan 22 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JOHN WORTHINGTON, | ) | No. 90037-0 |
| Petitioner, | ) | |
| v. | ) | |
| WESTNET, | ) | |
| Respondent. | ) | |
| | ) | Filed JAN 2 2 2015 |

JOHNSON, J.—This case involves the application of the Public Records Act (PRA), chapter 42.56 RCW, to task forces formed under the Interlocal Cooperation Act (ICA), chapter 39.34 RCW. We accepted review to address whether the West Sound Narcotics Enforcement Team (WestNET), a multijurisdictional drug task force, is an entity subject to the PRA. Because the trial court granted the defendant's CR 12(b)(6) motion to dismiss, we reach only a narrower procedural issue: can the parties to an interlocal agreement establish, as a matter of law, that their own task forces do not exist for the purpose of the PRA?

We hold that the ICA does not provide the contributing agencies with such an unqualified power. In concluding that the terms of the agreement alone conclusively established WestNET's capacity for suit, the trial court deprived the

*Worthington v. WestNET*, 90037-0

plaintiff of an opportunity to present evidence in support of his argument that WestNET's *actual* operational structure subjects it to the PRA's purview. That approach is inconsistent with our general approach to PRA issues and the ICA itself. RCW 39.34.030(5). Accordingly, we reverse the Court of Appeals and remand for further factual determination proceedings.

FACTS

WestNET is a multiagency, multijurisdictional drug task force formed by an "Interlocal Drug Task Force Agreement" (Agreement) executed in June 2009 among several Washington State municipalities and the federal Naval Criminal Investigation Service (NCIS).[1] Resp't's Suppl. Clerk's Papers (Resp't's Suppl. CP) at 125. The Agreement was executed pursuant to chapter 39.34 RCW, a statute that permits various agencies and municipalities to create multijurisdictional task forces in order to coordinate activities and make the most efficient use of their resources. Because the focus of chapter 39.34 RCW is to promote efficiency and coordination, the statute allows the parties to enter into interlocal agreements without necessarily forming a separate legal entity. RCW 39.34.030(4). The Agreement at issue here explicitly provides that because WestNET "does and must

---

[1] The Agreement includes the counties of Kitsap, Pierce, and Mason; the cities of Bainbridge Island, Bremerton, Port Orchard, Poulsbo, and Shelton; the Washington State Patrol; and the NCIS. Resp't's Suppl. CP at 125.

2

*Worthington v. WestNET,* 90037-0

operate confidentially and without public input," "[t]he parties do not intend to create through, this Agreement, a separate legal entity subject to suit." Resp't's Suppl. CP at 127.

In 2010, the petitioner, John Worthington, filed a public records request that WestNET disclose records related to a raid of his residence four years earlier, which he alleged was conducted by the WestNET drug task force. WestNET did not respond, and instead, the Kitsap County Sheriff's Office made some initial disclosures. The sheriff's office did not indicate why it responded instead of WestNET—neither explaining that WestNET did not exist as a legal entity or that WestNET was otherwise exempt from the PRA requirements. But Worthington would have been aware that the response came from the sheriff's office, rather than WestNET, because the sheriff's office sent the disclosures on its own letterhead.

Dissatisfied with the response, Worthington sued for relief under the PRA, serving the complaint on the address shared by the Kitsap County Sheriff's Office and the Kitsap County Prosecutor's Office. However, the complaint named WestNET as the only defendant. Per the Agreement, a Kitsap County deputy prosecutor appeared on behalf of WestNET and filed a CR 12(b)(6) motion to dismiss, arguing that Worthington failed to identify WestNET as a county or public

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

corporation that may be sued under RCW 4.08.120.[2] The prosecutor later amended that motion, asserting that WestNET was not a government agency subject to the PRA. The trial court denied the CR 12(b)(6) motion.

WestNET moved for reconsideration, arguing for the first time that WestNET was not an independent legal entity under the terms of the Agreement. Worthington's complaint contended that WestNET was a "'functional equivalent'" of a government agency and therefore subject to suit under the PRA. Clerk's Papers at 6. The trial court did not review any evidence and only considered the pleadings and the Agreement.[3] Finding that the terms of the Agreement conclusively established how WestNET operates, the trial court concluded that WestNET was not a sufficient "'something'" to constitute an agency subject to the PRA's requirements. Verbatim Record of Proceedings at 26. The trial court granted WestNET's CR 12(b)(6) motion, dismissing the complaint for failure to state a claim. The Court of Appeals affirmed, and we granted review. *Worthington*

---

[2] RCW 4.08.120 involves actions maintained against public corporations; its provisions are immaterial to this case.

[3] The trial court hesitated in proceeding on the CR 12(b)(6) motion and, on at least two occasions, offered to transmute the motion into a motion for summary judgment, under CR 56, since the court was considering evidence (the Agreement) outside the pleadings. However, both parties explicitly agreed to proceed as a CR 12(b)(6) motion and attached the Agreement as part of the pleadings.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*v. WestNET,* 179 Wn. App. 788, 320 P.3d 721, *review granted,* 180 Wn.2d 1021, 328 P.3d 903 (2014).

ANALYSIS

A CR 12(b)(6) motion may be granted only where there is not only an absence of facts set out in the complaint to support a claim of relief, but there is no hypothetical set of facts that could conceivably be raised by the complaint to support a legally sufficient claim. *San Juan County v. No New Gas Tax,* 160 Wn.2d 141, 164, 157 P.3d 831 (2007). Consideration of extraneous materials on a CR 12(b)(6) motion is permissible so long as the court can say, "no matter what facts are proven within the context of the claim, the plaintiffs would not be entitled to relief." *Haberman v. Wash. Pub. Power Supply Sys.,* 109 Wn.2d 107, 121, 744 P.2d 1032, 750 P.2d 254 (1987). Otherwise, the complaint must be transmuted into a motion for summary judgment. CR 56. For the foregoing reasons, CR 12(b)(6) motions are granted only "'sparingly and with care.'" *Orwick v. City of Seattle,* 103 Wn.2d 249, 254, 692 P.2d 793 (1984) (quoting 27 Federal Procedure *Pleadings and Motions* § 62:465 (1984)).

In this case, the appropriateness of the trial court's CR 12(b)(6) dismissal depends on whether the Agreement can conclusively establish that WestNET is a nonentity for PRA purposes, such that no conceivable set of facts could have been

*Worthington v. WestNET,* 90037-0

raised to support Worthington's claim. "Whether dismissal was appropriate under CR 12(b)(6) is a question of law that we review de novo." *San Juan County,* 160 Wn.2d at 164 (citing *State ex rel. Evergreen Freedom Found. v. Wash. Educ. Ass'n,* 140 Wn.2d 615, 629, 999 P.2d 602 (2000)).

We start our analysis looking at the scope of the PRA. The PRA (previously known as the public disclosure act (PDA), former chapter 42.17 RCW (2004))[4] is a "strongly worded mandate" aimed at giving interested members of the public wide access to public documents to ensure governmental transparency. *Hearst Corp. v. Hoppe,* 90 Wn.2d 123, 127, 580 P.2d 246 (1978). The PRA requires agencies to make certain records available for inspection and copying, and it enables individuals to sue to enforce those obligations. RCW 42.56.080, .550. The chapter applies to state and local agencies, which are defined as follows:

> "State agency" includes every state office, department, division, bureau, board, commission, or other state agency. "Local agency" includes every county, city, town, municipal corporation, quasi-municipal corporation, or special purpose district, or any office, department, division, bureau, board, commission, or agency thereof, or other local public agency.

RCW 42.56.010(1).

---

[4] The PRA was originally enacted as part of the PDA. In 2005, the PRA portion of the PDA was renamed and recodified as a distinct chapter under the RCW. *See* former ch. 42.17 RCW, recodified as ch. 42.56 RCW (LAWS OF 2005, ch. 274, effective July 1, 2006). Most of the cases referenced in this opinion cite to the PDA, but because there is no substantive difference in law, for the sake of clarity, the act will be referred to only as the PRA.

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Worthington v. WestNET,* 90037-0

With respect to the scope of the act, the statute unambiguously provides for a liberal application of its terms, explicitly subordinating other statutes to its provisions and goals:

> The people of this state do not yield their sovereignty to the agencies that serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may maintain control over the instruments that they have created. This chapter shall be liberally construed and its exemptions narrowly construed to promote this public policy and to assure that the public interest will be fully protected. In the event of conflict between the provisions of this chapter and any other act, *the provisions of this chapter shall govern.*

RCW 42.56.030 (emphasis added).

The statute's language "reflects the belief that the sound governance of a free society demands that the public have full access to information concerning the workings of the government." *Amren v. City of Kalama*, 131 Wn.2d 25, 31, 929 P.2d 389 (1997). Accordingly, courts must avoid interpreting the PRA in a way that would tend to frustrate that purpose. *Hearst Corp.*, 90 Wn.2d at 127.

In light of this liberal construction, reviewing courts have used a "functional equivalency" analysis to determine whether the PRA applies to a particular organization. *See Clarke v. Tri-Cities Animal Care & Control Shelter*, 144 Wn. App. 185, 192, 181 P.3d 881 (2008); *Telford v. Thurston County Bd. of Comm'rs*,

7

*Worthington v. WestNET,* 90037-0

95 Wn. App. 149, 161, 974 P.2d 886 (1999), *review denied,* 138 Wn.2d 1015, 989 P.2d 1143 (1999). In *Telford,* the court considered four factors[5] and concluded that two private nonprofit corporations that were formed to coordinate county officials were subject to suit under the PRA because they operated as a functional equivalent to a public agency. *Telford,* 95 Wn. App. at 165. The Court of Appeals applied the four-factor *Telford* analysis again in *Clarke,* concluding that a privately owned nonprofit animal shelter was required under the PRA to disclose its euthanasia logbooks because the Tri-Cities municipality had contracted out the county's animal control services to the shelter, rendering the shelter the "functional equivalent" of a public agency. *Clarke,* 144 Wn. App. at 194-95.

We find that the specific "*Telford* factors" have limited applicability here[6] but that *Telford* and *Clarke* are instructive insofar as they support the position that in determining whether a particular entity is subject to the PRA, courts engage in a practical analysis. We hold that the trial court's reliance on the pleadings and the

---

[5] Under the four-factor *Telford* analysis, courts consider (1) whether the entity performs a government function, (2) the level of government funding, (3) the extent of government involvement, and (4) whether the entity was created by the government.

[6] *Telford* and *Clarke* involve private organizations that perform public functions, which subjects them to the PRA. The particular four factors from *Telford* are irrelevant in this case because if WestNET were an agency at all, it undisputedly would be considered public rather than private.

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Worthington v. WestNET,* 90037-0

Agreement alone is inconsistent with that approach. The court cannot rely solely on the self-imposed terms of an interlocal agreement because the document does not reveal whether the task force, in fact, behaves consistently with that nonentity designation. For example, it is conceivable that despite its own terms, WestNET operates independently, maintains its own records, and effectively exists as a separate government agency such that it should be subject to the broad scope of the PRA and its provisions. The trial court could have considered other relevant factors that were not apparent from the terms in the Agreement: Does WestNET maintain a separate physical office? Where are the task force records kept? Does WestNET have a designated custodian of the records? If WestNET is not subject to the PRA, how would interested individuals request documents and to what extent would an individual have to engage in a document search among the 10 different municipalities and agencies? Essentially, the inquiry should focus on whether an interested individual could still adequately exercise his or her rights under the PRA if record requests and suits cannot be brought against WestNET directly. Without discovery, none of these questions can be answered.

The respondent argues that the CR 12(b)(6) dismissal is sustainable because portions of the ICA, RCW 39.34.030-.040, effectively immunize WestNET from suit as a matter of law. Subsection .030(4) does recognize the affiliate agencies'

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Worthington v. WestNET*, 90037-0

ability to form these agreements without necessarily forming a legal entity, and section .040 then provides a remedy in the event the nonentity task force is sued: one or more of the affiliate agencies are required to come forward as the real party in interest.[7] Interpreting those subsections together, we agree with the dissent that generally the ICA permits the formation of task forces that are unamenable to suit.

However, the ability to provide for task force immunity is qualified both by the PRA and the ICA itself.[8] First, as we noted above, the PRA explicitly subordinates all other statutes to its own provisions: "In the event of conflict

---

[7] Therefore, even if the court engaged in a factual inquiry and determined that WestNET was not an entity amenable to suit, the remedy would not necessarily be dismissal. Under CR 17, in the event the complaint names the wrong party, the proper remedy is a revision of the complaint identifying the real party in interest.

[8] Contrast the cases cited by the dissent, in which the enabling statute at issue is not qualified and instead conclusively provides for defendant's immunity. *See* dissent at 3-5 (citing *Roth v. Drainage Improvement Dist. No. 5*, 64 Wn.2d 586, 589-90, 392 P.2d 1012 (1964) (affirming the trial court in granting the CR 12(b)(6) motion because the statutory language makes clear that a drainage district organized under Laws of 1913, ch. 85.08, is not a municipal corporation or a quasimunicipal corporation with the power to sue or be sued); *Nolan v. Snohomish County*, 59 Wn. App. 876, 883, 802 P.2d 792 (1990) ("RCW 36.32.120(6), read together with RCW 36.01.010 and .020, makes clear the legislative intent that in a legal action involving a county, the county itself is the only legal entity capable of suing and being sued."); *Foothills Dev. Co. v. Clark County Bd. of County Comm'rs*, 46 Wn. App. 369, 376-77, 730 P.2d 1369 (1986) (action dismissed because RCW 36.32.120 requires that only the county shall sue and be sued on behalf of its subordinates); *Vannausdle v. Pierce County Dep't of Assigned Counsel*, noted at 149 Wn. App. 1054 (2009) (relying again on RCW 36.01.010, the Court of Appeals held that some of the named defendants were not entities capable of being sued because they were political subdivisions of the county); *Leeson v. McKinney*, noted at 92 Wn. App. 1052 (1998) (again relying on RCW 36.01.010 in affirming the trial court's dismissal of the suit on the ground that the Seattle Public Library lacked the capacity to be sued)).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Worthington v. WestNET,* 90037-0

between the provisions of this chapter and any other act, the provisions of this chapter shall govern." RCW 42.56.030. As such, the affiliates cannot designate a task force as a nonentity if doing so would conflict with PRA obligations and requirements (a consideration the trial court did not, and could not, make on the CR 12(b)(6) motion or by merely reading the terms of the Agreement).

Second, the ICA further qualifies the contributing agencies' ability to provide immunity for their own task forces:

> No agreement made pursuant to this chapter relieves any public agency of any obligation or responsibility imposed upon it by law except that:
> (a) To the extent of actual and timely performance thereof by a joint board or other legal or administrative entity created by an agreement made pursuant to this chapter, the performance may be offered in satisfaction of the obligation or responsibility.

RCW 39.34.030(5).

Therefore, even though RCW 39.34.030(4) contemplates the formation of unamenable task forces, subsection .030(5) prohibits the affiliates from using that nonentity status to avoid other statutory obligations.[9] The interplay of these statutes

---

[9] The dissent erroneously ends its analysis of the ICA with RCW 39.34.030(4), without considering the qualification set forth in subsection .030(5). By its language, .030(4) merely contemplates the *possibility* task forces may be formed without *necessarily* forming a legal entity. That possibility is qualified by subsection .030(5), which prohibits the contributing agencies from using these agreements to avoid other obligations. We cannot ascertain whether or not the arrangement violates other statutory obligations, particularly those arising under the PRA, just from reading the ICA or the Agreement.

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Worthington v. WestNET,* 90037-0

creates a question of both law and fact in which the reviewing court must determine whether enforcement of the Agreement's terms would effectively frustrate the purpose of the PRA. To the extent the terms of the Agreement frustrate the PRA, they are unenforceable under the ICA's subsection .030(5) unless another contributing agency can satisfy those obligations on WestNET's behalf. RCW 39.34.030(5)(a).

We cannot conclusively tell from the terms of the Agreement alone whether the arrangement frustrates the PRA. For example, without any designated keeper of WestNET records, the coordination of documents among the 10 contributing municipalities could potentially render disclosure requests so impractical or cumbersome that it frustrates the PRA's goal in providing individuals with wide reaching government access. It is also conceivable that the affiliate agencies could use this arrangement to strategically move documents among the multiple agencies or that WestNET could even keep documents with those affiliate agencies that are not subject to the PRA, such as the NCIS, in which case the affiliate agencies could avoid their PRA obligations entirely. In that scenario, the terms of the Agreement would be unenforceable under RCW 39.34.030(5).

On the other hand, it is possible that the arrangement satisfies the PRA requirements. For instance, the fact that the Kitsap County Sheriff's Office did

*Worthington v. WestNET,* 90037-0

respond to Worthington's initial records request suggests that another administrative entity *was* capable of fulfilling those PRA obligations, which would be permissible under RCW 39.34.030(5)(a). However, the trial court dismissed the suit before the necessary factual inquiry could be made. We hold that the suit should have survived, at least until discovery was completed.

CONCLUSION

WestNET's amenability to suit under the PRA cannot be determined on a CR 12(b)(6) motion. Although the ICA generally contemplates the formation of nonentity interlocal task forces, it does not shield all task forces, as a matter of law, from suit. Under the ICA, whether the Agreement's designation is enforceable depends on whether or not the arrangement impacts the contributing agencies' ability to fulfill their other statutory obligations. RCW 39.34.030(5). It is the interplay between the ICA and the obligations set forth by the PRA that creates a mixed question of fact and law. Thus, the trial court erred in concluding that the terms of the Agreement rendered WestNET, as a matter of law, immune from disclosure obligations under the PRA. We hold that the record is insufficiently developed to determine whether WestNET is an agency subject to the PRA, and accordingly, we reverse and remand the case for further proceedings.

*Worthington v. WestNET,* 90037-0

The Court of Appeals is reversed and remanded.

WE CONCUR:

14

No. 90037-0

Yu, J. (dissenting)—This case is less about the operation of the Public Records Act (PRA), chapter 42.56 RCW, than it is about the fundamentals of civil procedure. The question before us, contrary to the majority's assertion, is not whether public records related to WestNET are immune from disclosure. Clearly they are not, since Worthington admits that Kitsap County and other agencies have made WestNET records available to him. Rather, the question is only the proper party against whom a dispute about those records can be brought in court. Here, Worthington requested and received records from Kitsap County but challenged Kitsap County's responses by suing WestNET, which is not a legal entity. Because WestNET lacks the capacity to be sued, I would affirm the Court of Appeals. Members of the public can obtain records relating to WestNET by requesting them

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

from its component agencies, and if a dispute arises, suing those component agencies.

Though this case implicates the PRA, the majority reduces its discussion of the underlying PRA requests to a single sentence. A more thorough review of Worthington's complaint and attached exhibits is useful. Between 2010 and 2011, Worthington submitted four requests for public records related to the operation of "WestNET," the shorthand term for a group of 10 agencies jointly investigating drug crimes. He sent each of these requests by e-mail to employees of Kitsap County—only one of WestNET's 10 members—who responded by letter to each request and provided Worthington at least some responsive records. For example, Kitsap County replied to one request by "present[ing] a stack of papers" for Worthington's review. Clerk's Papers (CP) at 2. In response to another, the county "indicated [it] [w]ould release 539 pages of documents," which constituted its "entire investigative file." CP at 4, 35. As the majority acknowledges, "Worthington would have been aware that the response[s] came from [Kitsap County], rather than WestNET, because [Kitsap County] sent the disclosures on its own letterhead." Majority at 3.

Worthington's complaint alleges that Kitsap County's responses were incomplete, in violation of the PRA. The merits of that claim are not before us because instead of suing Kitsap County, Worthington named "WestNET" as the defendant. This is why I depart from the majority opinion. This case is not about

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

whether "parties to an interlocal agreement [can] establish . . . that their own task forces do not exist for the purpose of the PRA," majority at 1, or whether an interlocal agreement can "provide for task force immunity" from records requests. *Id.* at 10. Kitsap County's disclosures in response to Worthington's requests confirm that records held by agencies related to interlocal cooperatives, like WestNET, are disclosable under the PRA. Instead, this case is only about procedure: does WestNET have legal capacity to be a defendant or should Worthington have sued Kitsap County and/or other WestNET members instead.

Capacity is a fundamental principle of civil procedure. Since capacity relates to the intrinsic right to be in court, "[i]f a person or entity lacks capacity to sue or be sued, it cannot be a party in a court action." 14 KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 11:7, at 386 (2d ed. 2009). Thus the dispositive question is whether WestNET is an entity capable of suit. Entities are creatures of statute, and those statutes control the scope of the entities' existence. Counties, municipal corporations, and state agencies, for example, each have the capacity to be sued because they spring from enabling statutes that expressly create separate legal entities. *See* RCW 36.01.010 (counties); 35.58.180 (municipal corporations).

But not all government bodies have legal capacity. In *Roth v. Drainage Improvement District No. 5*, 64 Wn.2d 586, 589-90, 392 P.2d 1012 (1964), this court dismissed an action against a drainage improvement district organized by Clark

3

County under chapter 85.08 RCW, holding the district "is not a municipal corporation or a quasi-municipal corporation and *does not have the capacity to sue or to be sued*" (Emphasis added.) We reached this conclusion by analyzing chapter 85.08 RCW to determine if the statute contemplated that the district would be a separate legal entity. We cited several sections that vested ultimate control over the district with the county and thus concluded that drainage districts under that statute are subordinate to, and not separate entities from, the counties in which they operate. Therefore, the county was the only viable defendant. *Id.* (citing *Linn v. Walla Walla County*, 99 Wash. 224, 169 Pac. 323 (1917)).

Courts in this state have used *Roth*'s enabling-statute analysis to determine if a government body named as a defendant is a separate legal entity with capacity. Those courts have concluded "no" with respect to boards of county commissioners, the Snohomish County Council, the Pierce County Prosecuting Attorney's Office, the Pierce County Department of Assigned Counsel, the Mason County Jail, and the Seattle Public Library. *See Foothills Dev. Co. v. Clark County Bd. of County Comm'rs*, 46 Wn. App. 369, 376-77, 730 P.2d 1369 (1986); *Nolan v. Snohomish County*, 59 Wn. App. 876, 883, 802 P.2d 792 (1990); *Day v. Pierce County Prosecuting Attorney's Office*, noted at 167 Wn. App. 1052 (2012); *Vannausdle v. Pierce County Dep't of Assigned Counsel*, noted at 149 Wn. App. 1054 (2009); *Shackelford v. Mason County Jail*, 2013 WL 5786094, at *3 (W.D. Wash. Oct. 28,

4

2013); *Leeson v. McKinney*, noted at 92 Wn. App. 1052 (1998).[1] None of the enabling statutes for these bodies created separate legal entities, and in each case the proper defendants were the counties or, as to the library, the city of Seattle.

Thus, the majority should have examined the statute enabling WestNET's existence—the Interlocal Cooperation Act (ICA), chapter 39.34 RCW—to determine if WestNET is a separate legal entity with the capacity to be sued. Both the ICA and the majority clearly answer that question: "the statute allows [counties and municipalities] to enter into interlocal agreements *without necessarily forming a separate legal entity*." Majority at 2 (emphasis added) (citing RCW 39.34.030(4)). The terms of the interlocal agreement dictate whether the cooperative is merely an aggregation of its component entities or whether it creates a new entity in itself. RCW 39.34.030(3)-(4). And the terms of the agreement creating WestNET and the majority are equally clear that the agreement "'do[es] not intend to create . . . a separate legal entity.'" Majority at 3 (quoting Resp't's Suppl. CP at 127). As a result, I would apply *Roth* and hold WestNET is not a separate legal entity and lacks the capacity to be sued, and find that WestNET's component entities are the only viable defendants in this case. Those component entities are the "agencies" subject to the

---

[1] And, though not binding here, one court has found WestNET specifically is "not a legal entity and is therefore not a proper defendant." *Wood v. Kitsap County*, 2007 WL 1306548, at *1 n.3 (W.D. Wash. May 3, 2007).

PRA that allow the public to obtain records related to WestNET's operation. RCW 42.56.010, .070.

The majority rejects this result for two reasons, both unrelated to capacity. First, it holds that a subsection in the ICA—RCW 39.34.030(5)—requires we look to facts beyond the agreement's terms to determine if WestNET is an entity with obligations under the PRA. But subsection .030(5) speaks only to the obligations of WestNET's *members*, not of WestNET *itself*. The subsection provides that interlocal agreements cannot "relieve[] any public agency of any obligation or responsibility" otherwise required by law. RCW 39.34.030(5); *see also* RCW 39.34.030(2) (distinguishing a "public agenc[y]," like WestNET's component members, from its cooperative undertakings, like WestNET). The plain language of subsection .030(5) merely reaffirms that counties and municipalities cooperating under the ICA have existing legal obligations; it does not impose any obligations on the interlocal cooperatives those entities join. Simply put, Kitsap County cannot contract away its responsibilities under the PRA, but neither is WestNET required to assume them,[2] and the agreement here is unequivocal that "[a]ll rights, duties and obligations of the [contributing agency] shall remain with the contributing agency."

---

[2] The ICA permits, but does not require, counties and municipalities to discharge their legal obligations through interlocal cooperatives. RCW 39.34.030(5)(a) (providing "a joint board . . . *may* [offer performance] in satisfaction of the [public agency's] obligation or responsibility" (emphasis added)). WestNET did not purport to perform on behalf of Kitsap County, so this subsection is inapplicable.

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Resp't's Suppl. CP at 128. Worthington's action likewise remains only against WestNET's component members, and each member remains obligated to comply with the PRA for records it holds related to WestNET operations.

Second, the majority suggests that the overriding purpose of the PRA trumps the fundamental issue of whether WestNET has the capacity to be sued. While I wholeheartedly agree with the PRA's purpose, I cannot endorse the majority's result-oriented capacity analysis. "Questions relating to capacity are resolved by looking to the characteristics of the *party*, rather than the circumstances of a particular *claim*." TEGLAND, *supra* § 11:7, at 386 (emphasis added). In other words, a party's capacity to be sued should not depend on the statutory claim the plaintiff asserts. Because the majority overlooks this principle and instead focuses on vindicating the PRA, its opinion creates the odd result where WestNET is an "entity" that can be sued under the PRA but not under other statutes. For example, Worthington could not sue WestNET in federal court for alleged constitutional violations under 42 U.S.C. § 1983. There, as should be the case here, he would need to bring an action against WestNET's component entities. *See Hervey v. Estes*, 65 F.3d 784, 791-92 (9th Cir. 1995) (holding "TNET," a Tacoma-area drug task force also organized under the ICA, is not a person subject to suit since its interlocal agreement "d[id] not contemplate a separate legal entity").

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The majority reaches its outcome with noble intentions. As the majority opinion acknowledges, the ICA contemplates that some interlocal agreements will not create an entity with powers separate from those of its individual components. That possibility creates some administrative problems. The ICA seeks to address those problems by requiring two additional provisions in interlocal agreements that do not create separate legal entities: (1) the agreement must identify an administrator or a joint board responsible for the interlocal cooperative and (2) it must specify how the cooperative acquires, holds, and disposes of property. RCW 39.34.030(4). Noticeably absent from this list of additional required provisions is one identifying a records custodian charged with responding to PRA requests. Such omission results in many of the policy concerns the majority cites to support its conclusion that WestNET is a stand-alone entity. *See* majority at 12 (noting that "without any designated keeper of WestNET records, the coordination of documents among the 10 contributing municipalities could potentially render disclosure requests . . . impractical or cumbersome").

It might be good policy to require interlocal agreements to designate a records custodian who can coordinate records requests among the cooperative's component agencies. Doing so would relieve requestors from sending multiple requests, would ensure all agencies with responsive records receive the request, and would discourage perfunctory denials of requests. But the plain language of the ICA does

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

not require interlocal agreements to address public records requests. It is not this court's job to insert words into statutes or create judicial fixes, even if we think the legislature would ultimately approve of the result. Statutes that frustrate the purpose of others, though perhaps unintentional, are "purely a legislative problem." *State ex rel. Hagan v. Chinook Hotel, Inc.*, 65 Wn.2d 573, 578, 399 P.2d 8 (1965).

In sum, WestNET has no life independent of the separate entities that are parties to the interlocal agreement. I would affirm the Court of Appeals because WestNET is not a separate legal entity and has no capacity to be sued, and capacity is a legal question that a trial court can resolve on a CR 12(b)(6) motion. The Court of Appeals properly affirmed the trial court's dismissal.

I respectfully dissent.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

_____

Yu, J.

Madsen, C.J.

Fairhurst, J.