# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JOHN WORTHINGTON,<br><br>      Appellant,<br><br>  v.<br><br>CITY OF BREMERTON; CITY OF POULSBO; CITY OF PORT ORCHARD; KITSAP COUNTY; STATE OF WASHINGTON; WESTNET AFFILIATE JURISDICTIONS;<br><br>      Respondents, | No. 46364-4-II<br><br><br><br>UNPUBLISHED OPINION |

MELNICK, J. — John Worthington appeals the trial court's dismissal of his public records act (PRA)[1] claim against Kitsap County. He argues that the trial court erred by granting Kitsap County's CR 12(b)(6) motion to dismiss, by imposing CR 11 sanctions, by denying his motion to transfer venue or have a visiting judge hear the case, and by not holding an evidentiary hearing on the settlement agreement. We affirm.

## FACTS

### I. BACKGROUND FROM PRIOR LITIGATION

On July 6, 2007, Kitsap County Risk Management received a claim for damages from Worthington for what he described as a "raid upon his residence" by the West Sound Narcotics

---

[1] Ch. 42.56 RCW.

Enforcement Team (WestNET) on January 12, 2007.[2]  Clerk's Papers (CP) at 243.  Worthington

argued that the raid occurred because he researched the enforcement of Washington State medical

marijuana laws and submitted a study to the state legislature.

On July 1, 2008, Worthington, representing himself, signed a settlement agreement and

release with Kitsap County in exchange for $18,500.  In the agreement, Worthington agreed to

> forever release Kitsap County, its subdivisions, offices, attorneys, agents, officials,
> employees and assigns from all claims and causes of actions, including, but not
> limited to, all claims for damages, penalties, attorneys fees and costs and any forms
> of relief of any kind whatsoever, whether presently known or unknown, that may
> ever be asserted by the undersigned, his/her executors, administrators, successors,
> assigns or others, that in any way arise out of facts related to, or resulting from (a)
> any request for public documents that I made on or prior to the date of this
> agreement, (b) any future request by me or my attorneys, agents, assignees, or
> successors for public documents that is duplicative of any request for public
> documents that I made on or prior to the date of this agreement, or (c) stemming
> from or related to the incident described in the claim which I filed on or about July
> 6th, 2007 with the Kitsap County Board of Commissioners.

CP at 80.

On February 5, 2010, Worthington made a records request to Kitsap County which he

directed to the Kitsap County Sheriff's Office.  On March 26, 2010, the Sheriff's Office responded

to the request.  On May 23, 2011, Worthington made a second records request to Kitsap County

that was identical to the request he made in 2010, and that had already been answered.

A lawyer representing Kitsap County sent a letter to Worthington in response to a

complaint against Kitsap County.  The letter stated that Worthington waived his right to sue when

he signed the settlement agreement and the County would seek sanctions against him if it did not

receive notice of dismissal of the action by May 31, 2011.  On August 22, 2011, Worthington filed

---

[2] Worthington alleged that WestNET arrived at his door and his "home was ransacked, [his] family
was terrorized, and [his] private medical records were seized by an act of retaliation" by Roy
Alloway, a detective for the Kitsap County Sheriff's Office and WestNET.  CP at 21.

an amended complaint against Kitsap County alleging violations of the PRA regarding the same records request in 2010. On September 1, Worthington voluntarily dismissed the action.

On September 1, Worthington filed a new lawsuit in Pierce County against the State of Washington and the cities of Poulsbo and Bremerton doing business as WestNET. He alleged the same PRA violations from his previous suit against Kitsap County. WestNET moved for dismissal under CR 12(b)(6) and argued WestNET was not an entity subject to suit. WestNET also moved for a change of venue to Kitsap County. On October 14, 2011, the trial court granted WestNET's motion to transfer venue to Kitsap County and ordered Worthington to complete the transfer of venue within 60 days. The trial court did not rule on WestNET's CR 12(b)(6) motion.

On December 8, 2011, Worthington filed a third lawsuit in Kitsap County against WestNET. This lawsuit alleged the same PRA violations as in the previously filed suits. The trial court denied WestNET's motion to dismiss but on reconsideration, it found WestNET was not an entity for PRA purposes and Worthington's complaint did not state a claim against an existing legal entity. The trial court dismissed the case.

Worthington appealed to this court. We affirmed. *Worthington v. WestNET*, 179 Wn. App. 788, 793, 320 P.3d 721 (2014). But the Washington State Supreme Court reversed our decision and remanded the case to the trial court. *Worthington v. WestNET*, 182 Wn.2d 500, 512, 341 P.3d 995 (2015).

II.    PROCEDURAL HISTORY

Soon after our decision, but before the Washington Supreme Court's remand, Worthington initiated the present action against the City of Bremerton and Kitsap County. In his complaint, Worthington sought "full disclosure of all documents pertaining to the police action" that occurred on January 12, 2007. Suppl. CP at 388. The complaint stated that Worthington made e-mail

3

requests for records on February 5, 2010, and he received a response the same day. All records requested and discussed in Worthington's complaint related to WestNET's raid on his home in January 2007. He alleged the "WestNET Affiliate Jurisdictions violated the [PRA], by not providing a privilege log for Worthington's February 5, 2010 public records, and still has not provided Worthington the entire file known as W007-001." Suppl. CP at 396. Worthington sought "remedies for concealing, and altering public records under RCW 40.16.010," and an order that would require the sued jurisdictions "to comply with the [PRA] and the Washington State Open Public Meetings Act (OPMA), and pay fines for the violations of those acts." Suppl. CP at 389.

On April 9, 2014, Kitsap County filed a motion for dismissal under CR 12(b)(6) and for CR 11 sanctions against Worthington. The County argued that Worthington's complaint failed to state a claim upon which relief could be granted because the settlement agreement precluded his right to pursue the current action, the statute of limitations expired before the complaint was filed, and the action constitutes "the re-filing of an action previously filed [against the state of Washington and the cities of Poulsbo and Bremerton doing business as WestNET] . . . for which he was ordered to perfect transfer of venue" by December 2011. CP at 3. The County argued the same grounds as its basis for CR 11 sanctions.

On April 9, Worthington filed a motion to have a visiting judge hear the case, or in the alternative, to transfer venue to King County. In his motion, he claimed that Kitsap County's presiding judge admitted under oath that she felt she had a conflict of interest with WestNET. Worthington declared that he did not believe he could get a fair hearing in front of any Pierce County judge or Kitsap County judge. Kitsap County opposed the motion and argued that Worthington produced no evidence of actual prejudice or bias. In addition, the County argued that

4

it could not be sued in King County because actions against a county may only be commenced in the two nearest judicial districts.[3]

On April 16, 2014, Worthington responded to the County's motion to dismiss and for CR 11 sanctions. He argued that he never intended the settlement agreement to preclude him from requesting records under the PRA. Worthington argued that he should not be sanctioned because multiple claims were made to the Kitsap County Board of Commissioners, and those claims were the true underlying cause of the settlement.

Worthington filed an anti-SLAPP[4] motion to strike[5] and a motion for sanctions against Kitsap County. In response, Kitsap County filed another motion for an order imposing fees, statutory fees, and sanctions for Worthington's frivolous anti-SLAPP motion. On May 12, 2014, Worthington opposed Kitsap County's motion.

On May 16, the trial court granted Kitsap County's motion to dismiss under CR 12(b)(6) and for CR 11 sanctions. The trial court sanctioned Worthington and entered judgment against him. On May 30, the trial court issued its written findings of fact and supplemental conclusions of law for the CR 12(b)(6) motion to dismiss and for the CR 11 sanctions.

On June 19, the trial court determined Worthington's anti-SLAPP motion was frivolous and sanctioned Worthington. Worthington appeals.

---

[3] RCW 36.01.050(1).

[4] Anti-Strategic Lawsuits Against Public Participation.

[5] RCW 4.24.525.

ANALYSIS

I.    MOTION TO DISMISS

Worthington argues the trial court erred in granting Kitsap County's motion to dismiss because he made allegations that "set forth a proper claim that WestNET Affiliate Jurisdictions were required by law to name a public records officer, publish its publish records procedures in the WestNET interlocal agreement, the only legal binding agreement between parties."  Br. of Appellant at 6.  Kitsap County argues that the trial court properly dismissed the case because the statute of limitations on Worthington's action had expired.[6]  We agree.

A.    Standards of Review

A trial court should grant a motion to dismiss under CR 12(b)(6) "only if it appears beyond a reasonable doubt that no facts exist that would justify recovery." *Cutler v. Phillips Petrol. Co.*, 124 Wn.2d 749, 755, 881 P.2d 216 (1994).  We review CR 12(b)(6) rulings de novo.  *Cutler*, 124 Wn.2d at 755.

"A CR 12(b)(6) motion may be granted only where there is not only an absence of facts set out in the complaint to support a claim of relief, but there is no hypothetical set of facts that could conceivably be raised by the complaint to support a legally sufficient claim." *Worthington*, 182 Wn.2d at 505.  "We regard the plaintiff's allegations in the complaint as true, and consider hypothetical facts outside the record." *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 175 Wn. App. 840, 865, 309 P.3d 555 (2013) *aff'd*, 180 Wn.2d 954, 331 P.3d 29 (2014).  "Motions to dismiss are granted 'only in the unusual case in which plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.'"

---

[6] Worthington and Kitsap County argue other reasons exist to support their respective positions; however, because we dispose of this case on the statute of limitations, we need not address them.

*Nissen v. Pierce County*, 183 Wn.2d 863, 872, 357 P.3d 45 (2015) (quoting *Hoffer v. State*, 110 Wn.2d 415, 421, 755 P.2d 781 (1988)). For the foregoing reasons, CR 12(b)(6) motions are granted only "'sparingly and with care.'" *Orwick v. City of Seattle*, 103 Wn.2d 249, 254-55, 692 P.2d 793 (1984) (quoting 27 FEDERAL PROCEDURE *Pleadings and Motions*, § 62:465 (1984)).

> B.      Expiration of Statute of Limitations[7]

Worthington never presented evidence on the statute of limitations nor did he argue that it had not expired. The trial court concluded it had expired and relied on this fact as its basis for granting Kitsap County's CR 12(b)(6) motion.

CR 12(b)(6) is an appropriate vehicle for dismissal of a claim filed after the applicable statute of limitations has expired. *See Atchison v. Great W. Malting Co.*, 161 Wn.2d 372, 382, 166 P.3d 662 (2007). In 2005, the legislature amended RCW 42.56.550(6)[8] of the PRA to provide a one-year statute of limitations for actions of this type. LAWS OF 2005, Ch. 274, § 288. "Actions under this section must be filed within one year of the agency's claim of exemption or the last production of a record on a partial or installment basis." RCW 42.56.550(6).

In his complaint, Worthington alleged that his February 5, 2010 records request formed the basis for his claim. He also alleged that he received a response on March 2, 2010. Worthington also admits he went to the Kitsap County Sheriff's Office on March 26, 2010, and viewed a "stack" of documents. Suppl. CP at 390.

---

[7] Kitsap County did not file an answer. It filed a CR 12(b)(6) motion. Neither party raises an issue about the County's failure to affirmatively plead this defense and, therefore, we do not address it.

[8] In 2005, the legislature recodified RCW 42.17.340 as RCW 42.56.550. LAWS OF 2005, ch. 274, § 103.

The trial court concluded that "[t]he one-year statute of limitations for [Worthington's] claim regarding the public records act began to run upon the County's release of records on March 26, 2010, and expired on March 26, 2011." CP at 245. Nearly three years had passed since the expiration of the statute of limitations and the filing of this case. Therefore, regardless of the facts proven at trial, Worthington could not prevail on his claim.

The trial court did not err in granting Kitsap County's CR 12(b)(6) motion to dismiss because there existed no conceivable set of facts that Worthington could have raised to support his claim. Because this issue is dispositive, we need not reach the other arguments regarding the CR 12(b)(6) motion.

II.     CR 11 SANCTIONS

Worthington argues that the County's motion for sanctions was a SLAPP violation and that he withdrew and corrected any potential CR 11 violations. We disagree. The trial court imposed CR 11 sanctions against Worthington for his filing of the original complaint and for filing his motion to strike.

A.      Standard of Review

We review a trial court's imposition of CR 11 sanctions for an abuse of discretion. *Biggs v. Vail*, 124 Wn.2d 193, 197, 876 P.2d 448 (1994); *Stiles v. Kearney*, 168 Wn. App. 250, 260, 277 P.3d 9 (2012). "A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993).

CR 11[9] deals with baseless filings and filings made for an improper purpose. *West v. Wash. Ass'n of Cty. Officials*, 162 Wn. App. 120, 135, 252 P.3d 406 (2011); *MacDonald v. Korum Ford*, 80 Wn. App. 877, 883, 912 P.2d 1052 (1996). "A filing is 'baseless' when it is '(a) not well grounded in fact, or (b) not warranted by (i) existing law or (ii) a good faith argument for the alteration of existing law.'" *MacDonald*, 80 Wn. App. at 883-84 (quoting *Hicks v. Edwards*, 75 Wn. App. 156, 163, 876 P.2d 953 (1994)). "To impose sanctions for a baseless filing, the trial court must find not only that the claim was without a factual or legal basis, but also that the attorney who signed the filing did not conduct a reasonable inquiry into the factual and legal basis of the claim." *West*, 162 Wn. App. at 135.

B.      Trial Court Did Not Err In Imposing Sanctions For The Cause of Action

The trial court entered written findings of fact that Worthington's cause of action was not well grounded in fact, was interposed for improper purposes, was harassing in nature, and was frivolous. In its conclusions of law, the trial court also determined that Worthington's

---

[9]      The signature of a party . . . constitutes a certificate by the party . . . that the party . . . has read the pleading, motion, or legal memorandum, and that to the best of the party's . . . knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is well grounded in fact; (2) it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

If a pleading, motion, or legal memorandum is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it . . . an appropriate sanction.

CR 11(a).

> violation of the terms and conditions of the Order Transferring Venue [from the prior case] . . . does not constitute[ ] legal grounds for dismissal of the present action but supports the imposition of CR 11 sanctions in that it is further evidence that the present action was not interposed for proper purposes, but instead for purposes such as harassment or to cause unnecessary delay.

CP at 245.

The trial court concluded that Worthington's violation of the Pierce County Superior Court's order to transfer venue did not constitute grounds for dismissal. But it did show Worthington's improper purposes for filing the action. Worthington was equitably estopped from pursuing the action; the statute of limitations on the claim had expired "approximately three years" before the filing of this action; and, Worthington failed to transfer the case as ordered. CP at 245.

Therefore, we hold that the trial court did not abuse its discretion by imposing CR 11 sanctions against Worthington.

C.     The Trial Court Did Not Err In Imposing Sanctions For The Anti-SLAPP Motion

In response to the County's request for dismissal and CR 11 sanctions, Worthington filed an anti-SLAPP motion to strike and a motion for sanctions against the County. In response, Kitsap County filed another motion for an order imposing fees, statutory fees, and sanctions for Worthington's frivolous anti-SLAPP motion. The trial court granted the County's motion because it determined that Worthington's anti-SLAPP motion "abused the judicial process" of the court, was "not well grounded in fact or warranted by existing law, and was not supported by rational argument," and it was "frivolous and advanced without reasonable cause." CP at 207-08. Accordingly, the trial court sanctioned Worthington.

10

Worthington argues that the trial court erred in ruling his motion to strike was frivolous and cause for sanctions "because it relied on [the ruling] in *Worthington v. WestNET* [179 Wn. App. 788]."[10] Br. of Appellant at 8. We disagree.

The trial court did not abuse is discretion in imposing sanctions against Worthington for filing his anti-SLAPP motion because it determined it was frivolous and advanced without reasonable cause.[11]

The trial court determined that the complaint was frivolous because it was filed nearly three years after the statute of limitations had expired, and the anti-SLAPP motion was not well

---

[10] Because there was an independent basis to impose sanctions without the trial court's reliance on the prior decision, this argument is irrelevant. Furthermore, the trial court did not cite to the prior decision as a basis for sanctions for the anti-SLAPP motion. Worthington also argues that the trial court erred in relying on the prior decision for the CR 11 sanctions. However, as the trial court had many other reasons for imposing the CR 11 sanctions, the argument is irrelevant.

[11] We note that recently our Supreme Court determined in *Davis v. Cox*, 183 Wn.2d 269, 275, 351 P.3d 862 (2015), that the anti-SLAPP statute codified in RCW 4.24.525 was invalid because it "requires the trial judge to adjudicate factual questions in nonfrivolous claims without a trial," which "violates the right of trial by jury under article I, section 21 of the Washington Constitution." The anti-SLAPP statute "punish[es] those who file lawsuits—labeled strategic lawsuits against public participation or SLAPPs—that abuse the judicial process in order to silence an individual's free expression or petitioning activity." *Davis*, 183 Wn.2d at 275. The statute is unique in that it created an "entirely new method for adjudicating SLAPPS":

> The law's mainspring, subsection (4), provides that a party may bring a special motion to strike any claim that is based on "an action involving public participation and petition." RCW 4.24.525(4)(a). That phrase—"an action involving public participation and petition"—is a defined term that uses capacious language in five nonexclusive examples. [RCW 4.24.525(2)(a)-(e).] When a party brings such a motion, the moving party has "the initial burden of showing by a preponderance of the evidence" that the claim is based on an action involving public participation and petition.

*Davis*, 183 Wn.2d at 276. Worthington was able to bring such a motion, and the trial court appropriately ruled on the motion because Worthington's case was before the issuance of *Davis*.

grounded in fact or warranted by existing law. Therefore, we hold that because the trial court had tenable grounds for imposing the sanctions, it did not abuse its discretion.

III.     JUDICIAL BIAS

Worthington argues that the Kitsap County trial court should have transferred venue to a non-WestNET affiliated jurisdiction, or in the alternative, allowed a visiting judge from another county to preside over the case because the trial court was biased against him which violated the appearance of fairness doctrine. We disagree.

A.       Standards of Review

We review a trial court's refusal to grant a change of venue for an abuse of discretion. *Hickey v. City of Bellingham*, 90 Wn. App. 711, 719, 953 P.2d 822 (1998). A trial court may transfer venue when "there is reason to believe that an impartial trial cannot be had therein." RCW 4.12.030(2).

We review a claim of judicial bias under the appearance of fairness doctrine: "'a judicial proceeding is valid only if a reasonably prudent and disinterested observer would conclude that all parties obtained a fair, impartial, and neutral hearing.'" *State v. Bilal*, 77 Wn. App. 720, 722, 893 P.2d 674 (1995) (quoting *State v. Ladenburg*, 67 Wn. App. 749, 754-55, 840 P.2d 228 (1992)). But the party who argues that a judge has a bias must support the claim with evidence; a claim unsupported by such evidence is without merit. *State v. Post*, 118 Wn.2d 596, 619, 826 P.2d 172, 837 P.2d 599 (1992). Thus, before we will apply the appearance of fairness doctrine, Worthington must show such evidence of a judge's actual or potential bias. *See Post*, 118 Wn.2d at 619; *State v. Carter*, 77 Wn. App. 8, 11, 888 P.2d 1230 (1995).

B.       No Appearance of Fairness Doctrine Violation

Worthington claimed that Kitsap County's presiding judge's statement that she felt she had a conflict of interest with WestNET showed she was biased against him. Worthington filed a declaration in support of his motion to transfer venue, arguing that he did not believe he could get a fair hearing in front of any Pierce County or Kitsap County judge.

In his motion to transfer venue or for a visiting judge, Worthington argued that "Kitsap County and Pierce County judges have a conflict of interest to hear this case because of their involvement with WestNET and their 'special' relationship with WestNET officers." CP at 150. To support his contention, he referred the trial court to a hearing from March 2, 2012, where the trial court and Worthington's counsel discussed the relationship between WestNET and the court. Worthington takes this quote out of context. This hearing involved a separate lawsuit and there is no evidence in the current case that the trial court was biased against Worthington.

Worthington did not object to the judge hearing his 2012 case. In fact, in that case, Worthington's counsel affirmatively stated that the relationship was not an issue.[12] The trial court's comment in the prior case merely acted as disclosure to Worthington that members of the Kitsap County bench authorized search warrants for WestNET. Worthington does not point to any other instances that show bias. Worthington's argument is without merit because there is no evidence to show that a reasonably prudent and disinterested observer would not conclude that all parties obtained a fair, impartial, and neutral hearing before the trial court.

---

[12] Worthington claimed that he objected on the record, but he did not cite to any portion of the record as evidence.

Therefore, Worthington did not show bias in his current case, the trial court did not abuse its discretion when it denied Worthington's motion to transfer venue or for a visiting judge to oversee the case because Worthington presented no evidence that he would not receive an impartial trial in Kitsap County.

IV.     EVIDENTIARY HEARING

In his supplemental assignments of error, Worthington argues that there should have been a separate evidentiary hearing on the validity of his settlement agreement with Kitsap County. Kitsap County argues that Worthington did not raise this issue before the trial court, and therefore, we should not consider the issue.

A party generally waives the right to appeal an error absent an objection at trial. RAP 2.5(a). However, a party may raise an alleged error for the first time on appeal if it constitutes a manifest error affecting a constitutional right, a lack of trial court jurisdiction, or a failure to establish facts upon which relief can be granted. RAP 2.5(a)(3).

Because Worthington did not identify any portion of the record to show he asked for an evidentiary hearing on the settlement agreement, he raises this assignment of error for the first time on appeal. Therefore, because Worthington waived his right to appeal this issue, we do consider it.

We affirm the trial court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Maxa, A.C.J.

_____
Sutton, J.