¶63 (dissenting) — Assuming that Michael Ames’s declaratory judgment claims are not justiciable, those claims still raise issues of major public importance that demand resolution. Therefore, I would reverse the trial court’s dismissal of Ames’s petition for a declaratory judgment and remand for trial of that petition.
¶64 The majority opinion ably sets out the factual background of this appeal and the legal standards governing its resolution. Among those standards, threaded throughout the analysis are the rules governing dismissal under CR 12(b)(6). Dismissal under that rule should be granted only “ ‘sparingly and with care’ ” and only when it is “beyond doubt” that the plaintiff can prove “no set of facts, consistent with the complaint, which would justify recovery.” San Juan County v. No New Gas Tax, 160 Wn.2d 141, 164, 157 P.3d 831 (2007) (quoting Tenore v. AT&T Wireless Servs., 136 Wn.2d 322, 330, 962 P.2d 104 (1998)). To this end, we review dismissals under CR 12(b)(6) by asking whether there is any “hypothetical set of facts that could conceivably be raised by the complaint to support a legally sufficient claim.” Worthington v. WestNET, 182 Wn.2d 500, 505, 341 P.3d 995 (2015).
¶65 Even without reaching into the hypothetical, the record before us is unmistakably an overture of interests more profound than those of the individual players. After Ames e-mailed the lead detective on the Lynn Dalsing case that there was no evidence on any of the computers linking Dalsing to the crimes the prosecutor had charged, the detective forwarded Ames’s opinion to a deputy prosecuting attorney the same day. The prosecutor’s office and Dalsing’s defense counsel dispute when and if Dalsing’s counsel was notified of Ames’s conclusion that the evidence did not link Dalsing to her alleged crimes. Dalsing’s attorney stated he did not receive the e-mail chain in which Ames expressed this opinion until April 2013, long after the 2010 charges against Dalsing were dismissed in July 2011.
¶66 The following year, Ames filed a number of declarations in Dalsing’s subsequent suit against Pierce County *124 (County). In those declarations, Ames stated, among other matters, that the prosecutor told him not to answer Dalsing’s deposition questions about the e-mails he had sent to the detective and that only at that time did Ames know those e-mails had not been disclosed. In response, the County filed a declaration by Pierce County Deputy Prosecutor James Richmond declaring that Ames’s declarations contained “false assertions made under oath” and setting out supporting details. Clerk’s Papers at 576-82. Also, in a separate matter Ames filed a complaint with the County dated December 20, 2012, alleging retaliation and misconduct for its actions relating to the “Coopersmith Report.”
¶67 Then, in September 2013, the prosecutor notified Ames by letter that he planned to disclose four declarations by Ames in the Dalsing case, the Richmond declaration accusing Ames of making false accusations under oath, and the Coopersmith Report to defense counsel as evidence potentially impeaching Ames’s credibility as a witness called by the State. The prosecutor’s letter stated that he would make this disclosure in cases where Ames is expected to be called as a witness by the State. The next such case, the prosecutor stated, is its prosecution in State v. George, cause no. 05-1-00143-9 (Pierce County Super. Ct., Wash.).
¶68 Ames’s petition for writ of prohibition and declaratory relief claims that these materials are not potential impeachment evidence that must be disclosed. Because the declaratory judgment action was dismissed under CR 12(b)(6), no judicial determination of the facts necessary to resolve this claim has occurred. The evidence we have before us, summarized here and in the majority opinion, would be consistent with a determination that the prosecutor acted entirely in good faith in keeping with his duty under Brady v. Maryland, 373 U.S. 83, 86-87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and Giglio v. United States, 405 U.S. 150, 153-54, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), to disclose potential impeachment evidence. The evidence could also be consistent with the view that the disclosures were a misuse *125 of the prosecutor’s duties and authority in an attempt to retaliate against Ames for his actions in the Dalsing case.
¶69 Proof, though, is not the question before us. Instead, as shown, we must ask whether it is beyond doubt that Ames can prove no set of facts, consistent with the complaint, that would justify recovery. No New Gas Tax, 160 Wn.2d at 164. We must ask whether there is any hypothetical set of facts that could conceivably be raised by the complaint to support a legally sufficient claim. Worthington, 182 Wn.2d at 505.
¶70 Given the context and timing of Ames’s e-mails about the absence of evidence against Dalsing, his declarations in Dalsing”s civil suit, Richmond’s declaration accusing him of making false accusations under oath, and Ames’s complaint for retaliation against the County, one cannot reasonably conclude that Ames can prove no set of facts, consistent with his petition, that would justify a conclusion that these disclosures did not include legitimate potential impeachment evidence. Especially where, as here, the documents that would be truly impeaching were prepared by the prosecutor’s office, one may reasonably conceive of hypothetical circumstances under which these disclosures might not be compelled by the case law.
¶71 It must be stressed, and stressed again, that hypothesizing is a far distant exercise from determining the truth. In law, as in science, many hypotheses poorly correlate to the actual facts. A dismissal under CR 12(b)(6), though, prevents a party from developing the facts that may prove its case. A dismissal with that severe a consequence is allowed only when we can say, consistently with No New Gas Tax and Worthington, that there is no reasonably conceivable set of facts Ames could have proved that would entitle him to relief. Under the circumstances of this case, one may hypothesize such an array of facts.
¶72 That, though, does not end the inquiry. To conclude that dismissal of the claim for declaratory relief was improper under CR 12(b)(6), the hypothetical facts must show either that the claim was justiciable or that it falls within *126 the exception for issues of major public importance. Assuming the majority is correct that the claim is not justiciable, one must ask whether a hypothetical set of facts, consistent with the petition, would show this to be an issue of major public importance.
¶73 As the majority points out, in deciding whether an issue is of major public importance, “courts examine not only the public interest which is represented by the subject matter of the challenged statute, but the extent to which public interest would be enhanced by reviewing the case.” Snohomish County v. Anderson, 124 Wn.2d 834, 841, 881 P.2d 240 (1994). The Uniform Declaratory Judgments Act, chapter 7.24 RCW, is designed “ ‘to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered.’ ” Osborn v. Grant County, 130 Wn.2d 615, 631, 926 P.2d 911 (1996) (quoting RCW 7.24.120; Clallam County Deputy Sheriff’s Guild v. Bd. of Clallam County Comm’rs, 92 Wn.2d 844, 848, 601 P.2d 943 (1979)). This rule of liberal construction will apply to determinations of major public importance.
¶74 The majority contends that the issues raised in this appeal are not of major public importance because, among other reasons, they only touch on Ames’s attempt to clear his own name and to establish his credibility. Ames, without doubt, is attempting to clear his name and repair his credibility. His petition for declaratory judgment, though, also raises claims that reach far beyond any narrow, individual interest. For example, the petition claims that
Defendant is motivated to wrongfully discredit Det. Ames because he has spoken out truthfully on matters that discredit Mark Lindquist and expose his office to liability.
CP at 7.
Defendant is abusing its power and the judicial process to benefit itself and its officials and to mitigate against liability against the Prosecuting Attorney’s Office.
CP at 7.
*127 Mark Lindquist has an apparent bias and prejudice against Det. Ames because he has spoken out against Mark Lindquist and his office and because he refuses to remain silent on matters of public concern that negatively impact the prosecutor’s office even though he has been directed to do so by Mark Lindquist and his deputies.
CP at 7-8.
¶75 Mark Lindquist is abusing the power of his office to retaliate against Detective Ames. The petition also characterizes the issue on declaratory judgment as
whether Det. Ames has been truthful or whether the prosecuting attorney’s office has been dishonest in characterizing the evidence and in its declarations and representations to the court.
CP at 9.
¶76 None of these claims have been proved. As shown above, however, that is not the standard before us when reviewing dismissal under CR 12(b)(6). Instead, we ask whether it is “beyond doubt” that the plaintiff can prove “no set of facts, consistent with the complaint, which would justify recovery.” No New Gas Tax, 160 Wn.2d at 164. With the evidence before us, it is certainly conceivable that Ames could prove additional facts consistent with his allegations of governmental abuse. Those allegations, if true, would directly contest the integrity of the criminal justice system and of an agency that administers it. Such issues rank high in any measure of public importance. More to the point, the relief Ames requests is a declaration that the materials at issue are not potential impeachment evidence. If he is able to prove his allegations, this relief would remove any misuse of the duty to disclose in this case and would discourage similar tactics in the future. As such, the “public interest would be enhanced by reviewing the case” which is the heart of the standard set by Anderson, 124 Wn.2d at 841, for determining whether an issue is of major public importance.
*128 ¶77 The majority also makes the critical points that the prosecutor is under a duty to disclose potential impeachment evidence, that the prosecutor should err on the side of disclosure if in doubt, and that no one can adequately anticipate all possible uses that future defendants might make of the potential impeachment evidence at issue here. Before us, though, is a case where the principal evidence impeaching Ames was created by the prosecutor’s office, where the sequence of events could suggest some adversity between Ames and the prosecutor’s office, and where Ames’s petition alleges various flaws in the prosecutor’s development of the potential impeachment evidence. These allegations call into question whether the information created and released by the prosecutor in fact is legitimate potential impeachment evidence. If it is not, then the duty to disclose would likely not apply and future prosecutions would not be affected.
¶78 Against the backdrop of the evidence presented and the petition’s allegations, there are reasonably conceivable sets of facts Ames could have proved that would have raised issues of major public importance. With that, the petition for declaratory judgment should not have been dismissed under CR 12(b)(6). For that reason, I dissent.
After modification, further reconsideration denied July 26, 2016.
Review denied at 186 Wn.2d 1026 (2016).