# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | | |
|---|---|---|
| JOHN WORTHINGTON, | | No. 48590-7-II |
| Appellant, | | Consolidated with: |
| v. | | No. 48774-8-II |
| WestNET, | | |
| Respondent. | | UNPUBLISHED OPINION |

LEE, J. — John Worthington sued West Sound Narcotics Enforcement Team (WestNET) for a Public Records Act (PRA), chapter 42.56 RCW, violation, and our Supreme Court remanded for the superior court to determine whether WestNET "behaves consistently with that nonentity designation." *Worthington v. WestNET*, 182 Wn.2d 500, 503-04, 508, 341 P.3d 995 (2015). The superior court entered several orders on remand. Worthington appeals the following superior court orders: the order granting WestNET's motion for summary judgment; the order denying Worthington's motion for summary judgment; the order denying Worthington's motions to strike WestNET's briefs and pleadings, for CR 11 sanctions, and statutory fees; the order finding a declaration by WestNET's counsel did not present genuine issues of material fact; and the order denying Worthington's motion to reconsider.

We hold that the superior court did not err. Therefore, we affirm.

FACTS

A.    WESTNET

Our Supreme Court has described WestNET as follows:

> WestNET is a multiagency, multijurisdictional drug task force formed by an "Interlocal Drug Task Force Agreement" (Agreement) executed in June 2009 among several Washington State municipalities and the federal Naval Criminal Investigation Service (NCIS). Resp't's Suppl. Clerk's Papers (Resp't's Suppl. CP) at 125. The Agreement was executed pursuant to chapter 39.34 RCW, a statute that permits various agencies and municipalities to create multijurisdictional task forces in order to coordinate activities and make the most efficient use of their resources. Because the focus of chapter 39.34 RCW is to promote efficiency and coordination, the statute allows the parties to enter into interlocal agreements without necessarily forming a separate legal entity. RCW 39.34.030(4). The Agreement at issue here explicitly provides that because WestNET "does and must operate confidentially and without public input," "[t]he parties do not intend to create through, this Agreement, a separate legal entity subject to suit." Resp't's Suppl. CP at 127.

*Worthington*, 182 Wn.2d at 503-04 (footnote omitted).

B.    WORTHINGTON'S 2008 SETTLEMENT AGREEMENT WITH KITSAP COUNTY

In 2007, the WestNET drug task force conducted a drug raid on Worthington's home. In July 2008, Worthington entered into a settlement agreement with Kitsap County for various actions or inactions stemming from a "raid on his residence on January 12, 2007." Clerk's Papers (CP) at 1. The settlement agreement provided that, in return for $18,500, Worthington agreed to

> forever release Kitsap County, its subdivisions, offices, attorneys, agents, officials, employees and assigns from all claims and causes of actions, including, but not limited to, all claims for damages, penalties, attorneys fees and costs and any forms of relief of any kind whatsoever, whether presently known or unknown, that may ever be asserted by the undersigned, his/her executors, administrators, successors, assigns or others, that in any way arise out of facts related to, or resulting from (a) any request for public documents that I made on or prior to the date of this agreement, (b) any future request by me or my attorneys, agents, assignees, or successors for public documents that is duplicative of any request for public documents that I made on or prior to the date of this agreement, or (c) stemming

from or related to the incident described in the claim which I filed on or about July 6th, 2007 with the Kitsap County Board of Commissioners.

CP at 1963.

C.      CURRENT SUIT

In 2010, Worthington filed a public records request with WestNET to disclose records related to the 2007 raid on his home by the WestNET drug task force. *Worthington*, 182 Wn.2d at 504. WestNET did not respond. *Id.* Instead, the Kitsap County Sheriff's Office responded and made the initial disclosure of documents on its own letterhead. *Id.*

1.      Proceedings to the Washington Supreme Court

Worthington was dissatisfied with the disclosures, and in December 2011, he sued WestNET for violations of the PRA. Worthington alleged WestNET was subject to the provisions of chapter 42.56 RCW and that WestNET had violated the provisions therein by withholding nonexempt records and failing to provide an exemption log. A Kitsap County deputy prosecutor appeared on behalf of WestNET and filed a CR 12(b)(6) motion to dismiss, asserting that WestNET was not a government agency subject to the PRA. *Worthington*, 182 Wn.2d at 504.

The superior court dismissed the suit, concluding that "WestNET was not a sufficient 'something' to constitute an agency subject to the PRA's requirements." *Id.* at 505 (internal quotation marks omitted). In reaching this conclusion, the superior court relied on the terms of the "'Interlocal Drug Task Force Agreement'" (Interlocal Agreement) that the entities comprising WestNET had entered into. *Worthington v. WestNET*, 179 Wn. App. 788, 789-90, 320 P.3d 721 (2014), *rev'd*, 182 Wn.2d 500. We affirmed the superior court's dismissal of the suit. *Id.* at 789.

3

On discretionary review, our Supreme Court reversed. *Worthington*, 182 Wn.2d at 503. The court held that the superior court could not "rely solely on the self-imposed terms of an interlocal agreement because the document does not reveal whether the task force, in fact, behaves consistently with" its nonentity designation. *Id.* at 508. Accordingly, the court reversed and remanded the case to allow the superior court to make a factual and legal determination as to whether WestNET is an agency subject to the PRA. *Id.* at 512.

2.      Proceedings on Remand from the Washington Supreme Court

On remand to the superior court, WestNET moved for summary judgment. WestNET argued that (1) it was not an entity that was subject to suit in law or fact; (2) the purposes of the PRA were not frustrated by dismissing the action against WestNET because the Kitsap County Sheriff's Office fulfilled the PRA requests directed at WestNET's activities; and (3) Worthington was collaterally estopped from identifying Kitsap County as a party in interest because of the prior settlement agreement between Worthington and Kitsap County.

In support of its motion for summary judgment, WestNET attached a declaration from Kitsap County Sheriff's Lieutenant Earl Smith. Lieutenant Smith was the "WestNET Task Force Coordinator with the drug task force known as WestNET." CP at 1893. He stated that WestNET did not have employees. Instead, all individuals assigned to WestNET remained employees of the contributing member agency and were subject to the rules, regulations, and disciplinary proceedings of their employing agency. He stated that "[s]taff from the member agencies that are assigned to work with the task force frequently work out of a facility that is rented by Kitsap County," and WestNET did not create, generate, or retain any investigative records of its own. CP

4

at 1894. All of the reports and records were recorded and preserved as Kitsap County Sheriff's Office reports, and any requests for those reports or records were responded to by the Kitsap County Sheriff's Office.

Worthington also moved for summary judgment. Worthington's motion requested that the superior court enter the following orders: WestNET was "collaterally estopped from claiming it is not subject to the [PRA]"; WestNET "function[ed] as a records center for WestNET affiliates"; Worthington was "not required to resort to WestNET's unpublished PRA procedures"; and WestNET violated the PRA. CP at 12. Worthington also requested fines and attorney fees.

Worthington then filed a "Motion to Strike WestNET Briefs, Motion for CR 11 Sanctions and Fees under RCW 4.84.185." CP at 620 (some capitalization omitted). Worthington's argument was that it was improper for the Kitsap County Prosecutor's Office to have filed briefs on behalf of WestNET and Kitsap County employees, while also claiming that WestNET did not exist as a legal entity. Worthington contended that all of the briefs and motions filed by the Kitsap County Prosecutor's Office should be stricken, and fees under CR 11, RCW 4.84.185, and RCW 9A.60.040 should be imposed.

The superior court heard argument on the above-mentioned motions. After argument, the superior court denied Worthington's motions and granted WestNET's motion.

a. Superior court's ruling on Worthington's motions to strike, for CR 11 fees and for statutory fees

The superior court ruled first on Worthington's motions to strike, for CR 11 sanctions, and for statutory fees. The superior court looked at section 3(d) and section 6(c) of the Interlocal

5

Agreement to determine that Worthington's motion to strike was not persuasive. The superior court found that the Kitsap County Prosecutor's Office was "the logical choice for representation of WestNET in this action" because the Kitsap County Sheriff's Office was responsible for the dissemination of the records and because the Kitsap County Prosecutor's Office was designated "'as the attorney for the task force.'" Verbatim Report of Proceedings (VRP) (Sept. 25, 2015) at 16-17. The superior court noted that nothing in Worthington's filings refuted the propriety of the Kitsap County Prosecutor's Office's appearance as counsel nor was there any legal authority to support that Worthington had standing to challenge the Kitsap County Prosecutor's Office's appearance as counsel.

Accordingly, the superior court found that imposing CR 11 sanctions was not appropriate because the Kitsap County Prosecutor's pleadings were grounded in law and fact, and imposing fees under RCW 4.84.185 was not appropriate because Worthington was not the prevailing party to a frivolous motion. The superior court also found that RCW 9A.60.040 was not applicable because RCW 9A.60.040 is a criminal statute and the prosecutor's office has exclusive authority to make criminal charging decisions.

> b.    Superior court's ruling on summary judgment motions

The superior court next ruled on the competing summary judgment motions. The superior court noted that since the Supreme Court's remand of the case, the parties had completed discovery and that the motions addressed only the questions asked in the Supreme Court's opinion, specifically (1) "[d]oes WestNET maintain a separate physical office"; (2) "[w]ho are the task force -- where are the task force records kept"; (3) "[d]oes WestNET have a designated custodian

6

of the records"; (4) "if WestNET is not subject to the PRA, how would interested individuals request documents"; and (5) "to what extent would an individual have to engage in a document search among the ten different municipalities and agencies?" VRP (Sept. 25, 2015) at 27.

With respect to the Supreme Court's first question, the superior court determined that

> [f]rom the materials provided and the argument made before me, WestNET does not maintain a separate physical office or own or lease any facility. WestNET does operate out of an office space provided by the Kitsap County Sheriff's Office. This is supported by the declaration filed by Lieutenant Earl Smith from the Kitsap County Sheriff's Office and the WestNET task force coordinator.
> Because WestNET and/or Kitsap County deputies at this location are involved in undercover work, WestNET has not disclosed its physical location in discovery. And from what has been provided to me, I see nothing that requires WestNET to disclose this address under the [PRA].

VRP (Sept. 25, 2015) at 28.

With respect to the Supreme Court's second question, the superior court determined that

> [f]rom the materials provided and the arguments made before me, the records generated by the task force members are done under the umbrella of the Kitsap County Sheriff's Office. Even the letterhead Mr. Worthington asked me to consider at our oral argument on this matter is captioned "Kitsap County Sheriff/West Sound Narcotics Enforcement Team." And provides the Kitsap County Sheriff's Office address.
> This is also supported by the declaration filed by Lieutenant Earl Smith who also adds that all the records are provided with the Kitsap County Sheriff's Office report number.
> Mr. Worthington indicates that these records are really separate WestNET records because they are interested [sic] and tracked by Kathy Chittenden, who is office support for the task force team members.
> However, from the materials and arguments before me, it is clear that Ms. Chittenden is an employee, is employed by the Kitsap County Sheriff's Office. Her actual office location does not change the fact that she is a Sheriff's Office employee. Under the interlocal agreement, the Sheriff's Office remains her employer and is responsible for her salary, benefits, and any disciplinary matters that may be necessary.

7

Lieutenant Smith's declaration further claims that Ms. Chittenden is a Kitsap County Sheriff's Office employee, and she uses an e-mail address provided by Kitsap County.

VRP (Sept. 25, 2015) at 28-29.

With respect to the Supreme Court's third question, the superior court determined that

[f]rom the materials provided to me and the oral arguments in this issue, reports regarding investigations where WestNET task force members were involved are given a Kitsap County Sheriff's Office number; they are then maintained by the Kitsap County Sheriff's Office and request[s] for these reports are responded to by the Kitsap County Sheriff's Office, which is essentially what eventually happened here in Mr. Worthington's case.

VRP (Sept. 25, 2015) at 29-30.

With respect to the Supreme Court's fourth and fifth questions, the superior court determined that

[i]f WestNET is not subject to the PRA, how would interested individuals request documents[?] From what I have -- what's been provided to me, it appears that interested individuals would make a request under the Kitsap County Sheriff's Office to receive material available under the PRA.

Now, the second part of that inquiry is: And to what extent would an individual have to engage in a document search among the different municipalities and agencies?

The materials provided to me specifically list Kitsap County Sheriff's Office on their memorandums and reports filed, and their memorandums and reports contain a Kitsap County Sheriff's Office case number.

So if an individual contacted a different agency in error to receive materials under the PRA, it appears that they would be directed to the Sheriff's Office. So it shouldn't require them to contact all ten different agencies.

VRP (Sept. 25, 2015) at 30-31.

The superior court also noted that the Supreme Court directed that the "inquiry should focus on whether an interested individual could still adequately exercise his or her rights under the PRA if record requests and suits cannot be brought against WestNET directly." VRP (Sept. 25, 2015) at 31. To that point, the superior court reasoned,

8

[A]t some point [Worthington] requested that [sic] the materials from the Kitsap County Sheriff's Office and it was responded to by the Sheriff's Office. He was allowed to request, review, receive, and challenge the receipts of public records regarding WestNET investigations through the Sheriff's Office. He may dispute what he has been provided. And I understand that you do. But he has provided no information to me to show me that he has not been able to exercise his rights under the PRA.

VRP (Sept. 25, 2015) at 31.

Finally, the superior court addressed footnote 7 from the Supreme Court's opinion.

Footnote 7 from the Supreme Court's opinion said,

[E]ven if the court engaged in a factual inquiry and determined that WestNET was not an entity amenable to suit, the remedy would not necessarily be dismissal. Under CR 17, in the event the complaint names the wrong party, the proper remedy is a revision of the complaint identifying the real party in interest.

*Worthington*, 182 Wn.2d at 509 n.7.[1] Addressing footnote 7, the superior court said,

Mr. Worthington in his written and oral arguments, indicates that a potential remedy that I should consider before deciding the summary judgment motions would be to revise the complaint under CR 17 and identify the real party in interest.
So the real party in interest, if not WestNET, would be Kitsap County since they were responsible for fulfilling the public records request made by Mr. Worthington.

---

[1] CR 17 states in part,

(a) Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in the party's own name without joining the party for whose benefit the action is brought. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

> However, Mr. Worthington has already brought the same action against Kitsap County under Kitsap County Superior Court Cause No. 14-2-00474-7, while this cause number was pending before the Supreme Court.
> The result in cause number 14-2-00474-7 was a dismissal of the action on the grounds that Mr. Worthington's filing of the action violated the terms of his prior settlement with Kitsap County. And Mr. Worthington was equitably estopped from pursuing this action from Kitsap County. Therefore, I decline to revise the complaint under CR 17.

VRP (Sept. 25, 2015) at 32.

> c. Worthington's motion for reconsideration

On October 19, 2015, the superior court entered written orders denying Worthington's motions to strike, for CR 11 sanctions, for statutory fees, and for summary judgment and entered an order granting WestNET's motion for summary judgment. The next day, Worthington filed a motion for reconsideration of the rulings on the competing summary judgment motions.

On October 27, Ione George, a chief deputy prosecutor in Kitsap County and the attorney assigned to represent WestNET, filed a declaration pursuant to Rules of Professional Conduct (RPC) 3.3 to correct a statement she had made to the Washington Supreme Court during oral arguments in *Worthington*, 182 Wn.2d 500. In the declaration, George said,

> At oral argument before the Supreme Court, I was asked if WestNET had ever appeared voluntarily as a plaintiff or a petitioner in any action. Specifically the court asked if WestNET had filed any forfeiture actions. Based upon the language of the Interlocal agreement, my independent investigation and my knowledge of the facts at that time, I represented to the court that WestNET had not ever affirmatively initiated any action; that when forfeiture actions were filed, related to WestNET drug task force investigations, they were filed on behalf of the underlying agency who seized the evidence.
> . . . .
> Yesterday, October 26, 2015, I discovered that Deputy Prosecuting Attorneys who were involved in drug forfeiture proceedings related to WestNET drug task force operations had in the past filed pleadings in those actions which indicated that they (the Deputy Prosecuting Attorneys) were representing

10

> WestNET, as opposed to the underlying WestNET member agency or employee, and that the forfeiture proceeding was brought by WestNET, rather than, again, the underlying WestNET member agency.

CP at 2118-19. In light of George's declaration, the superior court stayed the hearing on Worthington's motion for reconsideration and ordered briefing and argument addressing whether the contents of the declaration presented any genuine issues of material fact that defeated the summary judgment orders that had been entered.

On November 16, Worthington filed a pleading titled "Plaintiff's Argument Whether Defendant's Declaration Pursuant to RPC 3.3(d) Presents Any Genuine Issue of Material Fact." CP at 970 (some capitalization omitted). In this pleading, Worthington argued that George's declaration created an issue of material fact regarding WestNET's ability to be sued because the declaration admitted WestNET was an agency that seized forfeited property and appeared in forfeiture proceedings.

On the morning of November 30, Worthington filed a pleading titled "Notice of Objection to WestNET Reply and Declarations to Whether Defendant's Declaration Pursuant to RPC 3.3[(d)] Shows There are Issues of Material Fact." CP at 1181 (some capitalization omitted). In this pleading, Worthington argued that WestNET's briefing and declarations were inadmissible because they could not be substantiated by George's personal knowledge, violated the rule against hearsay, and were speculative.[2]

---

[2] The record does not indicate that any further action was taken regarding this pleading.

The same day, the superior court heard argument regarding the effect of George's

declaration on the summary judgment orders. Worthington's argument is not included in the

record before this court nor is the superior court's oral ruling from the hearing. All that is included

in the record, and what Worthington relies on throughout his briefing to this court, is WestNET's

response where George says,

> The question as to whether or not WestNET exists as an agency is not the question we're dealing with today. WestNET clearly is an agency. It exists under an interlocal agreement. It was created by interlocal agreement. It is an agency. It exists. It's there. WestNET[,] it is a drug enforcement agency[;] there's no question about that.
>
> The question is, Mr. Worthington filed a lawsuit against it and on behalf of Kitsap County Sheriff's Office[,] I filed a Notice of Appearance that said you have to dismiss the lawsuit because it doesn't exist as an entity that can be sued, because it's not a legal agency, that's what it says in the interlocal agreement.
>
> The Supreme Court has said, We agree. On paper it's not a legal agency. The question is[,] for PRA purposes[,] is it acting in accordance with that nonlegal status? . . .
>
> . . . .
>
> What we are here today to address is the very limited question of was my mistake in front of the Supreme Court something that opens the door to everything Mr. Worthington has argued again? And I would submit it does not.

VRP (Nov. 30, 2015) at 3-5.

On January 22, 2016, the superior court entered an order denying Worthington's motion

for reconsideration.[3] On February 5, the superior court entered an order finding that George's

---

[3] Three days later, on January 25, Worthington filed a pleading titled "Plaintiff's Notice of Objection to Trial Court's Order on Fact Finding Hearing Whether the Declaration of Ione George Showed Genuine Issues of Material Fact." CP at 1766 (some capitalization omitted). The contents of this pleading were nearly identical to that contained in Worthington's pleading titled "Notice of Objection to WestNET Reply and Declarations to Whether Defendant's Declaration Pursuant to RPC 3.3[(d)] Shows There are Issues of Material Fact." CP at 1181 (some capitalization omitted). The record does not indicate that any further action was taken regarding this pleading.

declaration did not present any genuine issues of material fact and that the court's October 19, 2015 order granting summary judgment to WestNET and denying Worthington's motion for summary judgment remained in full effect.

On February 8, Worthington filed a notice of appeal seeking review of the superior court's orders that granted WestNET's motion for summary judgment; denied Worthington's motion for summary judgment; denied Worthington's motions to strike, for CR 11 sanctions, and fees; found George's RPC 3.3(d) declaration did not present genuine issues of material fact; and denied Worthington's motion to reconsider.[4]

---

[4] A month after filing his notice of appeal, Worthington filed a motion in the superior court seeking an order requiring WestNET to "appear and show cause why the Motion to Vacate Judgment/Order(s) of the Court should not be granted." CP at 1778. Worthington argued that he was entitled to vacation of the superior court's orders on the competing summary judgment motions and his motions to strike, for CR 11 sanctions, for an order stating that George's declaration created issues of material fact, and for reconsideration, under CR 60(b)(1), (3), (4), and (11). The superior court denied Worthington's motion to vacate and a written order was filed on March 18, 2016.

Worthington also filed a notice of appeal seeking review of the superior court's order denying his motion to vacate, which we consolidated with his February 8 notice of appeal. However, we dismiss this challenge because it is not sufficiently argued. Worthington devotes three sentences to the argument and does so without citation to any legal authority. As Worthington notes in his own filings to the superior court, "'[p]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.'" CP at 1827 (quoting *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012)); *see also Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (holding that arguments unsupported by authority and citation will not be considered on appeal); RAP 10.3(a)(6).

ANALYSIS

A.    ORDER DENYING WORTHINGTON'S MOTION TO STRIKE WESTNET'S BRIEFING

Worthington argues that the superior court erred in denying his motion to strike WestNET's briefing.  Specifically, Worthington argues that his motion to strike should have been granted because the Kitsap County Prosecutor's Office was judicially estopped from representing WestNET.  In support of his argument, Worthington cites *Bartley-Williams v. Kendall*, 134 Wn. App. 95, 98, 138 P.3d 1103 (2006), and what he alleges is a quote from "a supplemental brief to the Washington State Supreme [C]ourt earlier in this case."  Br. of Appellant at 40.  We hold that Worthington has not shown that the superior court erred.[5]

"Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position." *Bartley-Williams*, 134 Wn. App. at 98.  "'The purposes of the doctrine are to preserve respect for judicial proceedings without the necessity of resort to the perjury statutes; to bar as evidence statements by a party which would be contrary to sworn testimony the party has given in prior judicial proceedings; and to avoid inconsistency, duplicity, and . . . waste of time.'" *Id.* (alteration in original) (quoting *Cunningham v. Reliable Concrete Pumping, Inc.*, 126 Wn. App. 222, 225, 108 P.3d 147 (2005)).  We review the superior court's decision whether to apply the equitable

---

[5] In his briefing, Worthington does not provide any argument supporting his challenge to the superior court's denial of his motions for CR 11 sanctions or statutory fees.  Therefore, those challenges are waived. *Cowiche Canyon*, 118 Wn.2d at 809; RAP 10.3(a)(6).

doctrine of judicial estoppel for abuse of discretion. *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007).

*Bartley-Williams* involves the application of judicial estoppel to pursuing legal claims that are not listed as potential assets in a bankruptcy action after the bankruptcy has been discharged. 134 Wn. App. at 98. The *Bartley-Williams* court explains the legal concept of judicial estoppel, but Worthington does not explain how judicial estoppel applies to the present case. *Id.* And applying the facts from *Bartley-Williams* does not explain how judicial estoppel applies because the facts are dissimilar to those in the present case. Thus, no relevant legal authority is presented to support the contention that the Kitsap County Prosecutor's Office is judicially estopped from representing WestNET.

In addition to not identifying a legal basis for the application of judicial estoppel to strike all of WestNET's briefing, there is no factual support for the argument. The record shows that at all times the Kitsap County Prosecutor's Office and WestNET's members have asserted that the Kitsap County Prosecutor's Office is responsible for representing the interests of the WestNET's members. The Interlocal Agreement designates the Kitsap County Prosecutor's Office as the agency responsible for representing WestNET's members in several types of proceedings. The Interlocal Agreement also states that upon dissolution of WestNET, "ten percent [of its assets] shall go to *the Kitsap County Prosecutor as attorney for the Task Force*." CP at 246 (emphasis added). Finally, the Kitsap County Prosecutor's Office has been acting as counsel for WestNET since Worthington filed the original action, and the Kitsap County Prosecutor's Office has been doing so without objection from any entity whose interests might be aligned with WestNET's.

Thus, the facts in this case do not support Worthington's argument that the Kitsap County Prosecutor's Office or WestNET's members have been "asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position." *Bartley-Williams*, 134 Wn. App. at 98. Rather, the facts show that the position of the Kitsap County Prosecutor's Office and WestNET's members have acted consistently with the Interlocal Agreement's directive for the Kitsap County Prosecutor's Office to represent WestNET.

Worthington's argument that the Kitsap County Prosecutor's Office was judicially estopped from representing WestNET lacks legal and factual support. Accordingly, we hold that the superior court did not err in denying Worthington's motion to strike.

B.     ORDER GRANTING WESTNET'S MOTION FOR SUMMARY JUDGMENT

Worthington argues that the superior court erred in granting WestNET's motion for summary judgment because issues of material fact exist as to whether WestNET can be sued. We hold that based on the record before us, the superior court did not err in granting WestNET's motion for summary judgment because no genuine issues of material fact were shown that suggest WestNET behaved inconsistently with its nonentity designation.

1.     Legal Principles

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We review an appeal from dismissal of a case on summary judgment de novo.

16

*West v. Thurston County*, 169 Wn. App. 862, 865, 282 P.3d 1150 (2012). "All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party." *Id.* at 866.

A defendant who moves for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Once that burden is met, the burden shifts to the party with the burden of proof at trial to "'make a showing sufficient to establish the existence of an element essential to that party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In demonstrating the existence of material facts, the nonmoving party may not rely on "mere allegations . . . , but a response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." CR 56(e).

2.      Supreme Court's Questions for Remand

In remanding this case to the superior court, our Supreme Court held that courts "cannot rely solely on the self-imposed terms of an interlocal agreement because the document does not reveal whether the task force, in fact, behaves consistently with that nonentity designation." *Worthington*, 182 Wn.2d at 508. Accordingly, our Supreme Court directed that on remand "the inquiry should focus on whether an interested individual could still adequately exercise his or her rights under the PRA if record requests and suits cannot be brought against WestNET directly." *Id.* at 509. To answer this question, our Supreme Court provided questions to be answered through discovery. *Id.* at 508-09. Those questions were (1) "[d]oes WestNET maintain a separate physical

17

office"; (2) "[w]here are the task force records kept"; (3) "[d]oes WestNET have a designated custodian of the records"; and (4) "[i]f WestNET is not subject to the PRA, how would interested individuals request documents and to what extent would an individual have to engage in a document search among the 10 different municipalities and agencies?" *Id.* We hold that there is no genuine issue of material fact that WestNET behaved consistently with its nonentity designation.

### a. Does WestNET maintain a separate physical office?

The first question our Supreme Court identified as relevant to determining whether WestNET behaved consistently with its nonentity designation was whether WestNET maintained a separate physical office. *Id.* WestNET presented evidence that WestNET did not maintain a separate physical office, and Worthington did not identify any evidence to the contrary.

The Interlocal Agreement does not mention the existence of a separate physical office nor does it provide an option for how one would be funded or maintained. Lieutenant Smith's declaration stated that the staff assigned to work with the task force sometimes worked out of a facility rented by Kitsap County. Thus, nothing in the record suggests even an inference that WestNET maintains its own physical office.

### b. Where are the task force records kept?

The second question our Supreme Court posed was where are WestNET's records kept. *Id.* at 509. Here, the uncontroverted evidence shows that WestNET's records are retained by the Kitsap County Sheriff's Office.

18

Lieutenant Smith stated in his declaration that "[i]nvestigations performed by the WestNET team are recorded and maintained as records of the Kitsap County Sheriff's Office and are assigned a Kitsap County Sheriff's Office report number" and that "WestNET creates, generates and retains no investigative records of its own." CP at 1894. Additionally, WestNET uses a Kitsap County facility and does not have its own facility.

Worthington does not identify anything in the record that shows documents relating to WestNET's activities are not kept in Kitsap County by the Kitsap County Sheriff's Office. In fact, the documents Worthington provided as WestNET's records all have headers that say, "Kitsap County Sheriff." Some also include the Kitsap County Sheriff's Office's address, along with "West Sound Narcotics Enforcement Team" or "WestNET." And the correspondence Worthington included in the record to detail his pursuit of WestNET records show Worthington corresponding with Kitsap County personnel, who are using Kitsap County e-mail addresses and Kitsap County stationary. Thus, there is no genuine issue of material fact that the Kitsap County Sheriff's Office is responsible for recording and maintaining the records of WestNET's activities and that those records are kept in Kitsap County by the Kitsap County Sheriff's Office.

c.      Does WestNET have a designated custodian of the records?

The third question our Supreme Court has identified as relevant to determining if WestNET behaved consistently with its nonentity designation was whether there was a designated custodian for the records generated by WestNET's activity. *Worthington*, 182 Wn.2d at 509. The record shows that Kitsap County is the designated custodian of the records.

19

Under the Interlocal Agreement's provisions, Kitsap County was the custodian of WestNET's records. Consistent with the Interlocal Agreement, the evidence presented through discovery shows that the Kitsap County Sheriff's Office creates the records, assigns each record a Kitsap County Sheriff's Office report number, and maintains the records. Worthington's requests for WestNET records have been responded to by Kitsap County personnel or have "Kitsap County" included in the header of the document. Thus, based on the appellate record, there is no genuine issue of material fact that Kitsap County is the designated custodian of the records of WestNET's activities.

d.      How easy is it to identify the correct agency to request documents from?

The final question our Supreme Court has identified as relevant to determining if WestNET behaved consistently with its nonentity designation was how easily interested individuals could find the correct agency from which to request documentation of WestNET's activities. *Id.* The record shows that interested individuals would quickly be able to identify Kitsap County as the agency from which to request documents.

The Interlocal Agreement does not contemplate requests for public records directed towards WestNET. This is likely because the Interlocal Agreement states that the members "do not intend to create through[] this Agreement[] a separate legal entity subject to suit." CP at 242.

The record shows that the Kitsap County Sheriff's Office creates the records, assigns each record a Kitsap County Sheriff's Office report number, and maintains the records relating to WestNET's activities. Records of WestNET's activities include on the documents' headers "Kitsap County Sheriff" and often also include the Kitsap County Sheriff's Office's address. Thus,

an individual desiring to request WestNET records would need to contact only the Kitsap County Sheriff's Office. If an interested individual were to request public records about WestNET's activities from another member, that member would either request the public records from the Kitsap County Sheriff's Office or direct the interested individual to make the request with the Kitsap County Sheriff's Office. Thus, an interested individual would not need "to engage in a document search among the 10 different municipalities and agencies" but would only need to contact one or two. *Worthington*, 182 Wn.2d at 509.

> e. WestNET behaved consistently with its nonentity designation.

On remand, our Supreme Court posed four questions to help answer the ultimate issue—whether WestNET behaved consistently with its nonentity designation envisioned by the Interlocal Agreement. *Id.* at 508-09. We hold that there is no genuine issue of material fact that WestNET behaved consistently with its nonentity designation.

The record shows that (1) WestNET does not maintain a separate physical office, and agency personnel assigned to WestNET work out of an office provided by Kitsap County; (2) the records of WestNET's activities are created and maintained in Kitsap County by the Kitsap County Sheriff's Office; (3) Kitsap County is the custodian of the records of WestNET's activities; and (4) interested individuals would easily be able to identify Kitsap County Sheriff's Office as the agency from which to request public records relating to WestNET's activities. Thus, Worthington fails to show the existence of a genuine issue of material fact suggesting WestNET acted inconsistently with its nonentity designation.

21

3.      George Declaration

Worthington argues that the superior court erred in ruling that George's declaration, made

pursuant to RPC 3.3, did not create an issue of material fact to preclude summary judgment.

Because the superior court ordered briefing and argument addressing whether the contents of the

declaration presented any genuine issues of material fact, we treat the superior court's decision

here as a continuation of the summary judgment proceedings that had previously occurred.

Accordingly, we review the superior court's ruling de novo. *West*, 169 Wn. App. at 865.

Worthington contends that George's declaration and statements at oral argument before the

superior court admit that WestNET is an agency subject to suit under the PRA because WestNET

has appeared in seizure and forfeiture actions. We disagree.

a.      Contents of the George declaration

The pertinent part of the George declaration stated,

> I discovered that Deputy Prosecuting Attorneys who were involved in drug
> forfeiture proceedings related to WestNET drug task force operations had in the
> past filed pleadings in those actions which indicated that they (the Deputy
> Prosecuting Attorneys) were representing WestNET, as opposed to the underlying
> WestNET member agency or employee, and that the forfeiture proceeding was
> brought by WestNET, rather than, again, the underlying WestNET member agency.

CP at 2118-19.

The crux of Worthington's argument is that because WestNET was named in the caption

of the seizure and forfeiture actions, WestNET is therefore an agency that is subject to suit under

the PRA. No legal basis is provided to support this contention. Therefore, this challenge is waived.[6] *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Also, this argument lacks factual support. The Interlocal Agreement states that the Kitsap County Prosecutor will represent various members in the forfeiture proceedings that are initiated by the personnel those members employ. Additionally, the headers on all of the notices of seizure and intended forfeiture say "Kitsap County Sheriff" in bold letters above "West Sound Narcotics Enforcement Team" and all of the footers provide the address, telephone number, and fax number of the Kitsap County Sheriff's Office. All of the notices of administrative hearings had the same headers and footers as the notices of seizure and intended forfeiture, listing "Kitsap County Sheriff's Office" in bold at the top and providing the Kitsap County Sheriff's Office's address, phone number, and fax number at the bottom. The subject line on all of the notices of administrative hearing state, "Kitsap County Sheriff's Office, West Sound Narcotics Enforcement Team (WestNET) v. [the personal property number]". CP at 2166-69.

Similarly, all of the notices of administrative hearing begin by stating, "A hearing to determine whether or not certain personal property seized by the Kitsap County Sheriff's Office, West Sound Narcotics Enforcement Team, should be forfeited to the seizing agency has been scheduled for: . . . ." CP at 2194. All of the notices of administrative hearings were also signed on behalf of Steve Boyer, the Kitsap County Sheriff, and provided a phone number identified as

---

[6] For this same reason, Worthington's argument that WestNET's appearance in a case he filed against it in Pierce County makes WestNET subject to suit also fails.

belonging to the Kitsap County Prosecutor's Office for questions to be directed to regarding the notice.

Finally, the orders of forfeiture were all presented by Kitsap County prosecuting attorneys, written on Kitsap County Prosecutor's Office pleading paper and included the Kitsap County logo and Kitsap County Prosecutor's Office address, phone number, fax number, and website listed on every page. Therefore, simply naming WestNET in the caption of seizure and forfeiture actions does not create a genuine issue of material fact as to whether it is an agency subject to suit under the PRA because the documentation of the seizure and forfeiture actions made clear that it was the Kitsap County Sheriff's Office that was initiating the actions.

        b.      George's comments at oral argument

Worthington also argues at various points throughout his briefing that "WestNET has admitted in the hearing on November 30, 2015, that it is an agency" and is therefore subject to suit for violations of the PRA. Br. of Appellant at 19. Worthington's argument is not persuasive because George's argument to the court was that WestNET could not be sued.

The pertinent part of George's argument to the court was as follows:

> The question as to whether or not WestNET exists as an agency is not the question we're dealing with today. WestNET clearly is an agency. It exists under an interlocal agreement. It was created by interlocal agreement. It is an agency. It exists. It's there. WestNET . . . is a drug enforcement agency there's no question about that.
> The question is, Mr. Worthington filed a lawsuit against it and on behalf of Kitsap County Sheriff's Office I filed a Notice of Appearance that said you have to dismiss the lawsuit because it doesn't exist as an entity that can be sued, because it's not a legal agency, that's what it says in the interlocal agreement.
> . . . .

24

What we are here today to address is the very limited question of was my mistake in front of the Supreme Court something that opens the door to everything Mr. Worthington has argued again? And I would submit it does not.

VRP (Nov. 30, 2015) at 3-5. As the transcript shows, George's comments were not an admission that WestNET is an agency that is therefore subject to suit. Instead, George's comments argued that WestNET was created by the Interlocal Agreement as a drug enforcement task force and that it is not subject to suit. Accordingly, George's comments at oral argument do not create an issue of fact that precludes summary judgment.

          c.        No issue of material fact regarding George's declaration

The extensive documentation that accompanied the seizure and forfeiture proceedings clearly identified the Kitsap County Sheriff's Office as the agency bringing the actions and the Kitsap County Prosecutor as counsel for those proceedings. No factual or legal basis has been provided to show otherwise. Also, George's comments at oral argument argued that WestNET was not subject to suit for violations of the PRA. Therefore, the superior court did not err in finding that WestNET being named in the caption of forfeiture proceedings does not subject WestNET to suit under the PRA.

          4.        Conclusion

The appellate record shows no genuine issue of material fact that WestNET behaved consistently with its nonentity designation. Accordingly, we hold that summary judgment was properly entered in WestNET's favor.

C.      REMAINING ARGUMENTS

Worthington makes several other arguments in his appeal.  We hold his remaining arguments are not persuasive.

1.      Order Denying Worthington's Motion for Summary Judgment

Worthington first argues that the superior court erred in denying his motion for summary judgment.  Because we hold that the superior court did not err in finding that WestNET is not an agency subject to suit under the PRA and in granting summary judgment to WestNET, this argument necessarily fails.

2.      Alleged PRA Violations and Penalties

Worthington argues that WestNET violated the PRA and that the superior court erred when it refused to award penalties against WestNET for violating the PRA.  Because we hold that WestNET is not an agency subject to suit under the PRA, these arguments fail.

3.      Motion to Reconsider Summary Judgment Rulings

Worthington argues that the superior court erred in denying his motion to reconsider its rulings denying his motion for summary judgment and granting WestNET's motion for summary judgment.  Because we hold that the superior court did not err in granting WestNET's motion for summary judgment, we similarly hold that the superior court did not err in denying Worthington's motion to reconsider.

4.      Legal Doctrines Precluding WestNET's Argument

Worthington asserts that the superior court "erred when it failed to rule [that] WestNET was barred by judicial and collateral estoppel, res judicata, and horizontal stare decisis from

26

arguing they are a non-entity not subject to suit after appearing in court as WestNET." Br. of Appellant at 32 (bolding omitted). We disagree.

Worthington argues that WestNET is judicially estopped from claiming it is not an agency and not subject to suit because it applied for search warrants, appeared in property seizures, was listed in judgment and sentence documents, and collected fines. In support, he again cites *Bartley-Williams* and *Arkison*.

As explained above, *Bartley-Williams* does not apply to the facts in this case because it concerns the application of judicial estoppel to pursuing legal claims that are not listed as potential assets in a bankruptcy action after the bankruptcy has been discharged. 134 Wn. App. at 98. The *Arkison* case is similarly inapplicable to the facts of this case, as it also concerns the failure to list a potential legal claim in a bankruptcy petition. 160 Wn.2d at 537. Worthington does not present relevant legal authority to support his contention that WestNET is judicially estopped from claiming it is not an agency subject to suit under the PRA.

Even if we accept Worthington's factual assertions as true, he does not show that the elements of judicial estoppel have been met such that WestNET may not argue it is not subject to a PRA suit. The three factors of judicial estoppel are

> (1) whether "a party's later position" is "clearly inconsistent with its earlier position"; (2) whether "judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Arkison*, 160 Wn.2d at 538-39 (internal quotation marks omitted) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)).

Here, WestNET's current position is that it is not an agency subject to suit under the PRA. With respect to the first element, the conduct of officers from WestNET members applying for search warrants, the positions taken by the Kitsap County prosecuting attorneys representing WestNET in legal actions, and WestNET's receipt and disbursement of funds pursuant to the Interlocal Agreement are not "clearly inconsistent" with WestNET's current position.[7] Even if they were inconsistent, courts granting the search warrants, overseeing the property seizures, issuing the judgment and sentence documents, and distributing the fines cannot be said to have been misled because the ability of WestNET to be sued was never at issue in any of those proceedings. Thus, even if Worthington's factual assertions were true, the assertions fail to satisfy the first two elements of judicial estoppel. Therefore, we hold that WestNET is not judicially estopped from claiming it is not an agency subject to suit under the PRA.[8]

5.    WestNET Publishing PRA Procedures

Worthington argues that the superior court erred "when it ruled Worthington was required to resort to unpublished public records procedures for WestNET." Br. of Appellant at 38 (bolding omitted). The superior court did not make such a ruling, and Worthington does not provide a

---

[7] Just as Worthington's argument that the Kitsap County Prosecutor's Office was judicially estopped from representing WestNET lacked factual support in the record, Worthington's citation to WestNET's receipt of checks is factually suspect. For example, Pierce County wrote a check to "WEST NARC ENFORCEMENT, TEAM C/O KITSAP COUNTY SHERIFFS DEPT" at the Kitsap County Sheriff's Office address. CP at 1245. The check was indorsed on the back by "KITSAP COUNTY SHERIFF FOR KITSAP COUNTY TREASURER." CP at 1245.

[8] Worthington does not provide argument or citation to legal authority to support his assertions regarding the effect of collateral estoppel, res judicata, or horizontal stare decisis. Accordingly, we do not consider these assertions. *West*, 168 Wn. App. at 187.

citation to the record to indicate what aspect of the superior court's ruling he might be referring to. Accordingly, we do not consider this argument. *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012).

Worthington also argues that "WestNET should have published WestNET PRA procedures just like other jurisdictions have." Br. of Appellant at 52 (bolding omitted). The "other jurisdictions" Worthington is referring to is the "Olympic Peninsula Narcotics Enforcement [T]eam (OPNET)." Br. of Appellant at 52. Worthington provides no further argument or citation to authority. Accordingly, we do not consider this argument. *West*, 168 Wn. App. at 187.

6.      Validity of the 2008 Settlement Agreement

Worthington argues that the superior court erred in ruling that the settlement agreement was not a valid cause for dismissal under summary judgment without conducting an evidentiary hearing first. We do not address this argument because the superior court did not dismiss Worthington's suit against WestNET because of the settlement agreement between Worthington and Kitsap County. The superior court's ruling addressed the settlement agreement with respect to the potential for Kitsap County to be substituted as the real party in interest under CR 17. The superior court concluded that Kitsap County could not be substituted as the real party in interest because Worthington had "forever release[d] Kitsap County, its subdivisions, offices, attorneys, agents, officials, employees and assigns from all claims and causes of actions" relating to the actions that precipitated Worthington's current claims against WestNET. CP at 1963. Worthington's challenge to that ruling is addressed below.

7.      CR 17 Substitution of Real Party in Interest

Worthington argues that the superior court erred in not substituting the State of Washington as the real party in interest after finding that WestNET acted consistently with its nonentity designation. We do not consider this argument because it was raised for the first time on appeal.

"[W]e consider solely the issues and evidence the parties called to the trial court's attention on the motion for summary judgment. RAP 9.12. But we will consider an issue raised for the first time on appeal if the claimed error is a manifest error affecting a constitutional right. RAP 2.5(a)(3)." *Vernon v. Aacres Allvest, LLC*, 183 Wn. App. 422, 427, 333 P.3d 534 (2014), *review denied*, 182 Wn.2d 1006 (2015).

Worthington did not argue below that the State of Washington should be substituted as the real party in interest, and the superior court did not rule on whether the State of Washington should be substituted as the real party in interest. Worthington does not argue on appeal that this claimed error is a manifest error affecting a constitutional right. Accordingly, we do not consider this argument for the first time on appeal. *Id.*; *see also Barker v. Mora*, 52 Wn. App. 825, 828, 764 P.2d 1014 (1988) (holding that an argument for a CR 17 violation cannot be raised for the first time on appeal).

8.      Collateral Estoppel

Worthington also argues on appeal that the superior court erred in ruling that "Case No. 14-2-00474-7 collaterally estopped Worthington." Br. of Appellant at 51 (bolding omitted). Presumably, Worthington is arguing that he should not be collaterally estopped from suing Kitsap County. Worthington does not include legal citation or analysis for this argument. Therefore, we do not address this argument. *West*, 168 Wn. App. at 187 ("'[p]assing treatment of an issue or lack

30

of reasoned argument is insufficient to merit judicial consideration'" (alteration in original) (quoting *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998)); *see also Cowiche Canyon*, 118 Wn.2d at 809 (holding that arguments unsupported by authority and citation will not be considered on appeal).

9.      Striking Portions of George's Declaration

Worthington argues that portions of George's declaration should be stricken from the superior court's record. Worthington did not raise these arguments below and does not argue on appeal that this claimed error is a manifest error affecting a constitutional right. Accordingly, we do not consider this argument for the first time on appeal. *Vernon*, 183 Wn. App. at 427.

Even if Worthington's November 30 and January 25 pleadings,[9] were sufficient, the record remains insufficient for us to consider this issue. There is no written or oral ruling on these pleadings in the record before us. Therefore, we cannot say whether the superior court did or did not err in its ruling on these pleadings.

It is the appellant's burden to perfect the record on appeal. "If the party seeking review intends to urge that a verdict or finding of fact is not supported by the evidence, the party should include in the record all evidence relevant to the disputed verdict or finding." RAP 9.2(b). When an appellant fails to perfect the record on appeal, we may decline to reach the merits of an issue because we do not have all the evidence relevant to the issue before us. *Rhinevault v. Rhinevault*,

---

[9] Worthington's November 30, 2015 and January 25, 2016 pleadings are titled "Plaintiff's Notice of Objection to WestNET Reply and Declarations to Whether Defendant's Declaration Pursuant to RPC 3.3[(d)] Shows There are Issues of Material Fact," and "Plaintiff's Notice of Objection to Trial Court's Order on Fact Finding Hearing Whether the Declaration of Ione George Showed Genuine Issues of Material Fact," respectively. CP at 1181, 1766 (some capitalization omitted).

31

No. 48590-7-II/
No. 48774-8-II

91 Wn. App. 688, 692, 959 P.2d 687 (1998). Therefore, we decline to reach the merits of this challenge.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Bjorgen, C.J.

Melnick, J.

32